## Richmond

JACK L. FARREN, ADMINISTRATOR OF THE
ESTATE OF ELLEN E. FARREN, DECEASED

v.

BOBBY EARL GILBERT AND ROANOKE RESTAURANT
SERVICE, INC.

December 3, 1982.

Record No. 800455.

Present: All the Justices.

*Glenn M. Hodge (Ronald D. Hodges; Wharton, Aldhizer & Weaver,* on briefs), for appellant.
*William R. Smith (William R. Smith, P.C.,* on brief), for appellees.

POFF, J., delivered the opinion of the Court.

This is an appeal from a judgment confirming a jury verdict for the defendants in a wrongful death action.

Ellen Farren was killed when she was struck by a ten-wheel truck owned by defendant Roanoke Restaurant Service, Inc., and operated by defendant Bobby Earl Gilbert. The accident occurred in a parking-delivery lot of a nursing home where the decedent was employed as a housekeeper. The paved lot lies on the west side of the building. Its western portion is marked for "pull-in" parking by vehicles facing east or west. The eastern portion adjacent to the building is marked for "parallel" parking by vehicles facing north or south. The distance between the two parking areas is approximately 21 feet. Lack of turning space makes it necessary for large delivery trucks to enter the driveway on the south side of the nursing home, back westward along the south wall of the building, turn the corner, and back northward between the two parking areas to the housekeeping room at the north end of the building.

At approximately 6:40 a.m. on January 2, 1979, a dark and rainy morning, Gilbert was making a delivery to the nursing home. The truck's clearance, bed, and back-up lights were burning, and as Gilbert entered the driveway, he turned on the "four-way flashers". The lot was illuminated by floodlights and a vapor light. The truck was equipped with two large rearview mirrors, containing auxiliary "spot mirrors" which expanded the driver's field of vision. Gilbert testified that, using these mirrors, he had a clear and unobstructed view to the rear except for a "blind spot" on the right where the right mirror did not "pick up that very corner of the back of that truck".

Gilbert had made deliveries to the nursing home twice a week for nearly five years. On the morning of the accident, he was accompanied by a driver-trainee, Bruce Kelly. Asked why he did not post Kelly as a lookout, Gilbert explained that "I had no reason to ask Mr. Kelly to get out of the truck for the simple reason that I don't usually carry anybody in the truck."

The truck was in low reverse gear and moving in an uninterrupted course toward the unloading area at a speed of "two or three miles an hour". Gilbert saw cars in the "pull-in" parking area on his right and, on his left, he "noticed" a woman, later identified as Mrs. Frances Mowbray, "open the door . . . and go into the nursing home." Just before he brought the truck to a stop, Gilbert felt "just a little roughness" in the steering wheel, and he remarked to Kelly that he did not recall a "speed bump" in that area. When Gilbert alighted from the truck, he saw the decedent's body lying facedown a few feet ahead of the left front wheel. The body was positioned approximately in line with the path the truck had traveled and at a point near the "parallel" parking space opposite the "pull-in" parking space where the decedent's car was parked. There was no damage to Mrs. Farren's clothing and no injury to any part of her body except the head. The officer who examined the truck was unable to determine what part of the vehicle had struck the decedent; however, defendants stipulated at trial that the truck had struck her and caused her death.

Mrs. Mowbray testified that, on the morning of the accident, she had parked her car in the "pull-in" parking area and the decedent had parked beside her. Both cars were facing the building. Mrs. Mowbray got out of her car, raised her umbrella, and "yelled at Ellen" that she would go inside and get a key to unlock the housekeeping door. She "yelled pretty loud", but the decedent, who was "sitting in her car" and "sort of looking straight over the hood", did not respond. Mrs. Mowbray acknowledged that she had told the investigating officer that the decedent's lack of response "was unusual for her because she really was a friendly person".

As Mrs. Mowbray ran across the lot, she heard the noise of the truck's diesel engine and saw its lights "real bright" over the flat roof of the building. According to the investigating officer, the pavement was "wet" and "slippery". At the time the accident occurred, Mrs. Mowbray had returned with the key and was at-

tempting to unlock the housekeeping door and consequently, never saw what happened behind her.

Two of the decedent's fellow workers testified that she looked "tired" and "pale" during the week and on the day before the accident and that she had complained of not feeling well. The decedent's husband, the plaintiff-administrator in this case, testified that he and his wife had always held a morning devotional service together but that, on the day of the accident, she had left for work without seeing him.

Over plaintiff's objection, the trial court granted instructions on unavoidable accident and assumption of risk. On appeal, plaintiff argues that the instructions were not supported by the evidence and that the trial court thus committed reversible error. Assigning cross-error, defendants contend that the trial court should have sustained their motions to strike the evidence and enter summary judgment in their favor. Because we agree with defendants that plaintiff failed to prove a *prima facie* case of primary negligence, we need not consider the instructions challenged on appeal. *See Belcher v. Goff Bros.,* 145 Va. 448, 458, 134 S.E. 588, 591 (1926).

Our decision is controlled by familiar principles:

Negligence cannot be presumed from the mere happening of an accident. The burden is on the plaintiff to produce evidence of preponderating weight from which the trier of fact can find that the defendant was guilty of negligence which was a proximate cause of the accident. The evidence must prove more than a probability of negligence. The plaintiff must show why and how the accident happened. And if the cause of the accident is left to conjecture, guess, or random judgment, the plaintiff cannot recover.

*Sneed* v. *Sneed,* 219 Va. 15, 17, 244 S.E.2d 754, 755 (1978).

In order for circumstantial evidence to be sufficient to establish a *prima facie* case of primary negligence and proximate cause, "it must show more than that the accident resulted from one of two causes, for one of which the defendant is responsible and for the other of which she is not." *Id.* at 18, 244 S.E.2d at 755.

Plaintiff submits that the cause of this accident was Gilbert's failure to maintain a proper lookout. Plaintiff reasons that

the scene of the accident was well-lighted; that Gilbert had an unobstructed view; that Gilbert observed Mrs. Mowbray behind him and should have seen the decedent in a position of peril; and that "the failure to see what is in plain view constitutes negligence." Since the accident occurred while Gilbert was moving backwards, plaintiff's plain-view theory presupposes that the decedent crossed behind the truck at a point reflected by the rearview mirrors. But if, at the moment Gilbert observed Mrs. Mowbray on his *left,* the decedent ran through the "blind spot" at the *right* rear corner of the truck, she was outside Gilbert's field of vision. Such a possibility undermines plaintiff's plain-view theory of negligence.

Defendants suggest a different theory about the cause of the accident. It was raining, and, like Mrs. Mowbray, the decedent was running for shelter. The truck was moving slowly across her path. When it passed, she ran in front of the truck and along its left side. The pavement was "wet" and "slippery", the decedent had been ill, and she slipped or fainted and fell with her head beneath the left front wheel. As defendants note, the body was found only a few feet in front of that wheel in a posture approximately in line with the course the truck had traveled; the head and no other portion of the body was injured; and Gilbert felt a "roughness" in the steering wheel just before he stopped the truck. If defendants' theory is correct, Gilbert would not have seen the decedent, and the plain-view rule plaintiff invokes would not apply.

■ Alternatively, plaintiff raises the question whether Gilbert had a duty to post Kelly as a lookout. We need not decide that question. Negligence constitutes an actionable tort only when it is shown to be the proximate cause of an injury. In order to assist Gilbert in the backing maneuver, it would have been necessary for Kelly to station himself to the rear of the truck where he would be visible in the rearview mirrors. If the decedent crossed in front of the truck, Kelly would not have seen her, or if he did, would not have foreseen any danger. Even if she crossed behind the truck, there is nothing to show that Kelly could have or should have seen her in sufficient time to warn her or to enable Gilbert to take corrective action. Hence, the evidence fails to establish that the negligence plaintiff alleges was the proximate cause of the decedent's death.

■ Overruling plaintiff's motion to set aside the jury's verdict for defendants, the trial court found that "[t]he record is void of any evidence to explain how and why the accident happened." We agree. Plaintiff failed to prove that Gilbert was guilty of actionable negligence, and we hold that the trial court should not have submitted the case to the jury. We will, therefore, sustain defendant's assignment of cross-error and affirm the judgment.

*Affirmed.*