**Richmond**

Amos Levi Cooper, et al.

v.

Whiting Oil Company, Incorporated

Record No. 810668.

January 20, 1984.

Present: All the Justices.

*Joseph A. Billingsley, Jr. (Billingsley & Snead*, on briefs), for appellants.

*Harley W. Duane, III (May, Miller and Parsons*, on brief), for appellee.

COCHRAN, J., delivered the opinion of the Court.

In the trial court, two motions for judgment were filed against Whiting Oil Company, Incorporated, one by Amos Levi Cooper and Katie Lee Cooper, his wife, and the other by Helen Wolfrey, seeking damages for the alleged negligence of Whiting in maintaining a gasoline storage tank. The Coopers alleged that because of Whiting's negligence gasoline leaked from the tank, which was located on land adjoining their residence, contaminated their well, and damaged their property. Mrs. Wolfrey alleged that she resided on the tract of land on which the tank was located, and that the leaking gasoline contaminated her well and damaged her property.

Whiting denied liability in each action; by agreement the cases were consolidated for a jury trial. At the conclusion of the presentation of plaintiffs' evidence, however, the trial court sustained the defendant's motion to strike the evidence and by order entered January 30, 1981, granted summary judgment in favor of Whiting. On appeal, the Coopers and Mrs. Wolfrey (collectively, the Landowners), challenge this action; they also contend that the court erred in its rulings on the admissibility of certain evidence.

Mrs. Wolfrey had acquired by inheritance a house and a service station-store located in Stafford County on a one-acre parcel of land at the intersection of Routes 218 and 605. For approximately 25 years she and her husband, Wadel, had resided in the dwelling and operated as partners the business known as "Dodd's Store". Throughout this period, the Wolfreys sold gasoline which Whiting put in two underground tanks it had installed beside the store.

On a Sunday night in the late summer or fall of 1977, Wadel Wolfrey discovered that, although the tank containing unleaded gasoline should have had an adequate supply for Monday's business, it had run dry. The next morning, Wolfrey telephoned Franklin Sullivan, the Whiting representative with whom he had always dealt, and reported that there must be a leak in the tank. Sullivan said that Whiting would put more gasoline in the tank and determine whether the tank was leaking. Wolfrey believed that 200 gallons were pumped into the tank that day from a Whiting truck.

Using a stick, Wolfrey measured the level of gasoline in the tank Monday night; on Tuesday morning he reported to Sullivan that it had declined about an inch and a half. Wolfrey estimated that two inches of gasoline as shown by the stick were approximately eight gallons. Sullivan told him to check the tank again

the next day. Informing Sullivan on Thursday that the level of gasoline was still declining, Wolfrey offered to help pump out the tank that day while the business was closed, but Sullivan directed him to continue checking. No one from Whiting ever came during the week to pump out the tank or to investigate the loss of gasoline. On Friday, Wolfrey emptied the tank by filling family vehicles and selling the rest of the gasoline at cost. Thereafter, the tank remained empty. Wolfrey estimated that approximately 200 gallons of gasoline were lost because of the leak.

The unleaded gasoline tank, installed when the Wolfreys first began to operate the store, was never inspected, repaired, or replaced by Whiting. There was no lock on the tank, but Wolfrey opened it only when he wished to determine whether an additional supply of gasoline was needed.

Since 1958 the Coopers had resided in a house which they built on their land adjoining the Wolfrey property. A well supplied water to the residence for all purposes. In the late summer or fall of 1977, the water became bitter to the taste, turned brown, and smelled like gasoline. The Wolfreys confirmed, by laboratory tests, that there was gasoline in the well which had been the sole source of water for their residence for more than 25 years. The tainted water was undrinkable, and it discolored household fixtures and appliances in both residences, so that the Landowners had to replace their existing wells with new ones. In the well drilling, trees and shubbery were destroyed.

Three replacement wells were drilled on the Cooper land; the first two were unusable, and the third was satisfactory only for washing and cleaning. Two replacement wells were drilled on the Wolfrey tract; one was unusable, and the other was usable with water filters only for washing and cleaning. The Coopers and Wolfreys had been hauling water for drinking and cooking since their original wells became contaminated.

T. A. Houston, a consulting geologist, testified as an expert witness for the plaintiffs. Using slides to illustrate the basis for his conclusion, he gave his opinion that the gasoline leaking from the tank on the Wolfrey property seeped underground into the original Cooper and Wolfrey wells. Upon Whiting's motion, his testimony as to the potential contamination of the replacement wells was stricken as speculative.

John M. Hunter, an expert real estate appraiser, testified as to the diminution in value of the Cooper and Wolfrey properties as a result of the leakage of gasoline.

After the Landowners had concluded their presentation of evidence, Whiting moved to strike the evidence on the ground that they had failed to show that any negligence of Whiting was a proximate cause of the damages they alleged. Whiting also moved to strike the testimony of Hunter as to damages on the ground that his appraisals did not adequately relate to values immediately before and after the contamination occurred. The trial court first sustained the motion to strike Hunter's testimony. The court then ruled that the evidence was insufficient to establish negligence from Whiting's failure to inspect or maintain the tank, and that the evidence, while sufficient to show negligence by Whiting after it received notice of the leak, was insufficient to show that such negligence was a proximate cause of the Landowners' damages. Accordingly, the court granted Whiting's motion to strike the evidence.

■ The burden rested on the Landowners to prove by a preponderance of the evidence that Whiting was negligent and that its negligence was a proximate cause of the property damages alleged. The mere probability of negligence is insufficient. *Town of West Point* v. *Evans*, 224 Va. 625, 628, 299 S.E.2d 349, 351 (1983); *Farren* v. *Gilbert*, 224 Va. 407, 411, 297 S.E.2d 668, 670 (1982); *Sneed* v. *Sneed*, 219 Va. 15, 17, 244 S.E.2d 754, 755 (1978). Thus, the fact that gasoline leaked into the Landowners' wells does not of itself establish negligence on the part of Whiting.

■ The Landowners offered no evidence as to Whiting's duty to inspect and maintain the unleaded gasoline tank. There was no evidence that company policy or industry practice required that Whiting inspect the tank periodically. No evidence was presented to show how leaks could be prevented or even detected by appropriate inspection or maintenance procedures.

In an analogous case, *Hill* v. *Memorial Hospital, Inc.*, 204 Va. 501, 132 S.E.2d 411 (1963), plaintiff fell from a hospital bed and broke her arm. Claiming that the bed should have been equipped with side rails, she sued the hospital and three nurses. The trial court struck the plaintiff's evidence as to the nurses. On appeal, we affirmed this ruling, because the plaintiff had failed to prove "what duties, if any, the nurses were required to perform . . . and whether, as a part of such duties, they, or any of them, had either

the authority or the responsibility to place side rails on her bed." 204 Va. at 508, 132 S.E.2d at 416. Applying this rationale in the present case, we hold that since the Landowners did not show, by trade practice or otherwise, what duties Whiting had as to inspection and maintenance of the gasoline tank, they failed to prove that Whiting was negligent before it received notice of the leak.

The trial court ruled, and Whiting concedes, that there was evidence that Whiting was negligent after Wolfrey notified it of the leak. Indeed, Whiting's refilling of the leaking tank fully justifies this conclusion. But the trial court ruled there was no evidence that such negligence was a proximate cause of the damages to the Landowners' properties, because the jury could not determine what damages resulted from gasoline leaking from the tank after Whiting negligently refilled it. We agree.

There was no evidence as to the amount of gasoline that leaked into the ground before Wolfrey notified Whiting. On Sunday night, Wolfrey expected to have enough gasoline in the tank for business on Monday, but there was no evidence as to how many gallons would have been sufficient for this purpose. There was also no evidence as to the amount of gasoline in the ground that was necessary to contaminate the wells.

Wolfrey, who conceded that he did not keep accurate records, estimated that he lost about 200 gallons of gasoline because of the leak. But 200 gallons were pumped into the tank on Monday. An indeterminate amount was sold during the week, an unknown amount leaked out, and the residue was pumped into family vehicles or sold at cost.

When damages occur as a result of more than one cause, it is for the jury to determine what part of the damages is attributable to the defendant. The burden is on the plaintiff, however, to produce evidence to show within a reasonable degree of certainty the share of damages for which the defendant is responsible. *See Nat. Energy Corp.* v. *O'Quinn*, 223 Va. 83, 90, 286 S.E.2d 181, 185 (1982); *Smith* v. *The Pittston Company*, 203 Va. 711, 715, 127 S.E.2d 79, 82 (1962); *Heldt* v. *Tunnel District*, 196 Va. 477, 484, 84 S.E.2d 511, 515 (1954); *Panther Coal Co.* v. *Looney*, 185 Va. 758, 772, 40 S.E.2d 298, 305 (1946). To establish a prima facie case, circumstantial evidence must show more than that the accident resulted from one of two causes, for one of which the defendant is responsible and for the other of which he is not. *See Farren* v. *Gilbert*, 224 Va. at 411, 297 S.E.2d at 670;

*Sneed* v. *Sneed*, 219 Va. at 18, 244 S.E.2d at 755; *Hale* v. *Fawcett*, 214 Va. 583, 586, 202 S.E.2d 923, 925 (1974). In the present case, the Landowners have failed to present evidence to show within a reasonable degree of certainty the damages caused by gasoline leaking into the ground after Whiting was notified of the potential danger.

The doctrine of *res ipsa loquitur* is inapplicable. This evidential presumption is not available if the object which causes the damage is not under the exclusive control of the defendant. *See Logan* v. *Montgomery Ward*, 216 Va. 425, 429, 219 S.E.2d 685, 688 (1975). The evidence shows that the unleaded gasoline tank in question was not under the exclusive control of Whiting.

We hold that the trial court correctly granted the motion to strike the plaintiffs' evidence. Since this is the dispositive issue, we find it unnecessary to pass upon the evidentiary questions, which related only to damages rather than liability. Accordingly, we will affirm the judgment of the trial court.

*Affirmed.*