## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

John H. Prasse et al.

   v.

Virginia Power

May 29, 1990

Case No. L-89-106

By JUDGE WILLIAM H. LEDBETTER, JR.

This case is before the court on the plaintiffs' motion to reconsider the rulings made at trial in which the court struck the plaintiffs' evidence and awarded judgment to the defendant.

The plaintiffs (the Prasses) brought this action to recover for property damage allegedly caused by tension and tautness in electric lines owned and maintained by the defendant (Virginia Power). Virginia Power filed a responsive pleading denying liability.

Briefly, the facts are as follows.

The Prasses live on Waverly Village Road in a two-story frame house. In 1971, the electrical service to their house was upgraded and a new service line was run from a pole in their yard, situated within a utility easement, to the house. The line was connected to the upper part of the house through a large "eye bolt," and

from there the line ran down the side of the house to the meter box.

The eye bolt was installed by Mr. Prasse, an electrical contractor. He secured the eye bolt by drilling a hole through the exterior siding and a 2 x 4 stud in the attic. Although Mr. Prasse conceded that he did not do this at the direction or under the supervision of Virginia Power, he testified that the utility company's crew was present when he installed the eye bolt and, further, that the installation was a customary and acceptable method of connecting an electrical service line to a private residence. He said that he had used the same procedure many times in his business as an electrical contractor.

During the next several years, Mrs. Prasse complained to Virginia Power that she was "losing slack" in the service line. The dates and frequency of these complaints are not clear. There is no evidence as to whether Virginia Power performed any work in response to the complaints, and if so, what it did. In 1985, fourteen years after the new service line and eye bolt were installed, Mrs. Prasse noticed groaning and creaking noises in the house. On November 26, 1985, she heard a loud splitting sound and went to the attic to investigate. She discovered that the stud that held the eye bolt was split, that the exterior siding was bowed outward, that a window near the eye bolt was twisted, and that the service line between the pole and the house was drawn extremely tight. Virginia Power responded to her call and relaxed the tension in the line. After discussions, the parties agreed that Virginia Power would remove the line and install an underground service cable. This was done in 1986.

The Prasses never attempted to repair their house. Gradually, the bowed portion of the structure has "drawn back" to a more normal position, but considerable damage remains.

The case was tried without a jury on May 11, 1990. Mr. and Mrs. Prasse testified. They also called an architect and a building contractor who testified to the damage sustained and the cost of repair.

At the conclusion of the plaintiffs' case, Virginia Power moved to strike the evidence. The court granted the motion and awarded judgment to Virginia Power. The court observed that the Prasses had failed to make out

a prima facie case of negligence, and further, that they were not aided by the doctrine of res ipsa loquitur because the doctrine has no application to this case.

Thereafter, the Prasses filed a motion asking the court to reconsider its rulings. (In their motion, the Prasses contend that the court erred in holding that the doctrine does not apply in utility cases. Without benefit of a trial transcript, it is impossible to recite the precise statement made from the bench. Obviously, however, the court did not mean to say that the doctrine is *never* applicable in a case involving a utility. Rather, the court intended to note that the doctrine is not applicable to this case *just because* the defendant is a utility.) The matter was heard on May 21, 1990, and the court took the motion under advisement.

### Negligence

Ordinarily, every person owes a duty to take care for the safety of persons and property within a reasonably foreseeable range of peril. "Negligence" is the violation of that duty of care and is sometimes defined as the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation. The duty of care upon which the concept of negligence is premised is measured by the circumstances of each particular occurrence and therefore is an elastic term varying with the facts to which it is applied. For a claim of negligence to be actionable, the party asserting the claim must show the existence of a duty owed by the defendant to the plaintiff; a wrong committed by the defendant occasioning a breach of that duty; harm to the plaintiff; and proximate causation. The plaintiff bears the burden of proving these factors by a preponderance, or greater weight, of the evidence. *See* 13B M.J., *Negligence*, §§ 2, 3, 52.

Guided by these elementary principles of tort law, it is evident that the plaintiffs did not prove these elements at the trial of this case. They provided proof of harm, and for the purpose of this opinion, it will be assumed that they established that Virginia Power owed them a duty of care in the transmission of electrical power. However, they offered no evidence of negligence, and they offered no evidence of causation.

The plaintiffs seem to concede that they have not shown by direct evidence that Virginia Power was guilty of negligence which proximately caused the damage to the Prasses' house. It is for that reason that they rely upon the doctrine of res ipsa loquitur.

Nevertheless, if the court misreads the Prasses' position and no such concession has been made, the court here holds that the plaintiffs have failed, as a matter of law, to make out a prima facie case of negligence by direct evidence against Virginia Power. Therefore, unless their case is aided by the application of the doctrine of res ipsa loquitur, the Prasses cannot prevail.

### Res Ipsa Loquitur

Res ipsa loquitur means, literally, "the thing speaks for itself." It pertains to situations where the thing or instrumentality which caused the injury is in the exclusive possession and control of the defendant, the defendant has or should have exclusive knowledge of the way the thing is used, and the injury ordinarily would not occur if the one having such control uses the thing properly. *Easterling v. Walton*, 208 Va. 214 (1967). Under such circumstances, the thing speaks for itself and warrants an "evidential presumption," or at least an inference, of negligence. The burden of proof is not shifted to the defendant; however, if the doctrine is invoked, it avoids a verdict for the defendant at the close of the plaintiff's case because of the permitted inference of negligence. 13B M.J., *Negligence*, § 55.

In order that the doctrine of res ipsa loquitur apply, the object which caused the damage must have been under the exclusive control of the defendant. *Cooper v. Whiting Oil Co.*, 226 Va. 491 (1984). Thus, the doctrine cannot be invoked if the defendant does not have control of the premises or the instrumentality, or where there is divided responsibility and the unexplained occurrence may have been the result of something over which the defendant had no control. Here, although the plaintiffs' evidence showed that the lines in question belonged to the defendant, the plaintiffs' evidence indicated that Virginia Power shared the facilities along which the lines

ran with others, i.e., the telephone company and, perhaps, a cable television company.

The doctrine does not apply where an unexplained occurrence may have been attributable to one of two or more causes, for only one of which the defendant would be responsible. *Pepsi-Cola Bottling Co. v. Yeatts*, 207 Va. 534 (1966). Here, the plaintiffs' own evidence introduced the reasonable possibility that an automobile which struck the pole in the Prasse yard, or high winds which occurred shortly before Mrs. Prasse's discovery of the break in the stud, may have caused the tautness in the line. To compound the enigma, the plaintiffs introduced, through their architect, a sketch (Plaintiffs' Exhibit # 3) which demonstrates not only the tautness of the line between the Prasses' house and the pole in their yard, but in the lines between that pole and two others in closest proximity. The architect did not, because he could not, explain the origin or cause of the tautness.

Finally, to further distinguish this case from *Andrews v. Appalachian Electric Power Co.*, 192 Va. 150 (1951), relied upon by the plaintiffs, and other cases in which the doctrine of res ipsa loquitur has been applied, it is significant that those situations involved *occurrences* or *happenings*, whereas the case at bar involved a *condition*, or *status*, which endured for some part of fourteen years between installation of the new service line and the snapping of the attic stud which secured the eye bolt. What may have happened during those years to cause these lines to tighten, gradually or abruptly, to a point where the stress damaged the Prasses' house, is purest conjecture. Suspicion may point to the defendant who owns the facilities over which the line ran; however, such suspicion is not enough to prove or even to establish a prima facie case of negligence, and the doctrine of res ipsa loquitur does not provide a crutch for the reasons explained above.

### Implied Warranty and Implied Contract

The plaintiffs' motion for judgment contains counts of implied warranty and implied contract. Under the facts of this case, neither theory of recover is applicable.

As for implied warranty, the court agrees with the defendant that there is no implied warranty in connection

with the provision of services. Nonetheless, assuming that Virginia Power impliedly warranted its supply of electricity to the Prasses, what was the nature and extent of the warranty? The Prasses contend in their motion for judgment that the warranty required that the services "be done properly, safely, and without damage to the plaintiffs' property." Recognizing that a utility company is not an insurer, it is apparent that such a warranty is no more and no less than a negligence standard. Therefore, in disposing of the negligence action above, the court similarly disposed of the warranty, if one existed, to provide "safe and proper service" to the Prasses.

The concept of implied contract is out of place in this litigation. That principle normally applies to a transaction between two people where there is no express contract, but one must be implied to prevent unjust enrichment. *See* 4B M.J., *Contracts*, § 99 *et seq.* Again, however, even using that principle here, what did the parties impliedly contract to do? In their motion for judgment, the Prasses say that Virginia Power impliedly agreed to "provide safe and proper service to them." This so-called implied contract is nothing more and nothing less than a negligence standard. Therefore, the matter is disposed of in the court's rulings above.

## Conclusion

The Prasses have attempted to show that some time between 1971 and 1985, Virginia Power was guilty of negligence in maintaining its lines, proximately causing damage to their residence. There is no doubt that their house was damaged when the stress of the taut line snapped the stud which secured the eye bolt and resulted in other structural damage. But what caused the tautness in the line? When and how did it occur? Where did it occur-- i.e., where was the origin of the problem? As explained above, all of these crucial questions are left to speculation. Also, as explained above, the Prasses are not aided by the doctrine of res ipsa loquitur because Virginia Power was not in exclusive control of the instrumentality and because the plaintiffs' own evidence presented reasonably possible causes for the tautness which were not the responsibility of Virginia Power. The Prasses cannot recover

on the other counts in their motion for judgment because first, those theories of recovery have no applicability here and second, those counts are premised upon negligence and no negligence has been shown.

Accordingly, the motion to vacate the court's rulings of May 11, 1990, is denied. Judgment will be awarded to the defendant.