PRESENT:  All the Justices.

TAMARA AL-SARAY

v.  Record No. 230488

SHARON ELIZABETH FURR

OPINION BY
JUSTICE CLEO E. POWELL
JANUARY 16, 2025

FROM THE COURT OF APPEALS OF VIRGINIA

Tamara Al-Saray ("Al-Saray") appeals the decision of the Court of Appeals reversing the judgment of the Prince William County Circuit Court awarding her damages that resulted from a traffic accident involving Sharon Elizabeth Furr ("Furr").  Additionally, Furr assigns cross-error to several decisions of the trial court.

I.  BACKGROUND

On November 10, 2014, at approximately 4:30 p.m., Furr's vehicle collided with another vehicle driven by Janaia Spurlock ("Spurlock") at the intersection of Wellington Road and Market Place Avenue.  At that intersection, the westbound lanes of Wellington Road consisted of four lanes:  a left turn lane, a left-thru lane, a right-thru lane, and a right turn lane into the Market Place shopping center.  The weather at the time of the accident was sunny and clear and the road was dry.

Spurlock was traveling eastbound on Wellington Road; Al-Saray was a passenger in the vehicle, along with Spurlock's grandfather.  As she approached Market Place Avenue, Spurlock entered into the left turn lane to turn into the shopping center.  Spurlock had a solid green light, which permitted her to make the left turn into the shopping center but required her to yield to westbound traffic.  At that same time, Furr was traveling westbound on Wellington Road in the right-thru lane at the posted speed limit of 45 miles per hour.  As Spurlock made her left turn, her

vehicle was struck by Furr. Spurlock's grandfather, who was riding in the front passenger-side seat was injured in the accident and subsequently died.[1] Al-Saray, who was seated in the rear, passenger-side seat, also suffered significant injuries, including a traumatic brain injury. Al-Saray subsequently filed claims against both Spurlock and Furr alleging negligence and that Spurlock and Furr were jointly and severally liable for her injuries.

Immediately prior to the start of trial, Al-Saray nonsuited her claims against Spurlock. Additionally, the trial court ruled that Furr was not permitted to offer any evidence that Spurlock had pled guilty to failure to yield in connection with the accident.

At trial, Greg Burke ("Burke") testified that he was driving westbound on Wellington Road. According to Burke, he was in the right turn lane preparing to turn into the shopping center. Approximately eight seconds before the accident, Burke noticed Spurlock's vehicle in the intersection at the "left boundary of the left-thru lane" of Wellington Road. Burke testified that Spurlock's vehicle slowed to a stop or slow creep to yield the right-of-way to him. Burke stated that, approximately four seconds after he completed his turn into the parking center, he heard the crash.

In addition to Burke's testimony, Al-Saray presented portions of a deposition from Furr where Furr explained that she approached the intersection traveling around the speed limit of 45 miles per hour. She claimed she was looking straight ahead and, just before the collision, noticed "a white blur," although she did not know what it was. Furr estimated that she had 300-400 feet of unobstructed view, but she denied ever seeing Spurlock's vehicle before or after it entered the intersection.

---

[1] The cause of the grandfather's death is unclear from the record.

Evidence was also presented regarding Furr's eyesight. Furr initially claimed that she had had her eyes tested at the DMV in 2012, when she renewed her license. According to Furr, prior to the accident, she had "good or perfect vision." She confirmed that she was not wearing glasses as she drove on the day of the accident because she did not need them. Tina Williams ("Williams"), Furr's daughter, disputed Furr's statements, stating that Furr regularly wore her reading glasses while driving. Williams also claimed that she would not allow her daughter – Furr's granddaughter – to ride with Furr unless Furr was wearing reading glasses.

In a separate deposition, presented after Williams's testimony, Furr claimed that Williams was mistaken, and she only wore her reading glasses while driving when she needed to see street signs. Furr did, however, recant her earlier testimony about getting her eyes tested at the DMV in 2012. Furr admitted that she had never had her eyes examined until 2016, after the accident occurred. According to Furr, she had her eyes examined because she "was having trouble seeing things at a distance," specifically, more than 30 feet. As a result of the eye exam, she was prescribed glasses with bifocal lenses.

In addition to the testimony about the accident, extensive evidence about the nature and extent of Al-Saray's injuries was presented. At the close of Al-Saray's case-in-chief, Furr moved to strike the evidence, arguing Al-Saray did not demonstrate that Furr's actions were negligent or that any negligence was the cause of the collision. Furr contended Al-Saray failed to introduce evidence that Furr was required to wear corrective lenses while driving and failed to prove how and when Spurlock entered the intersection and began crossing the westbound lanes of traffic. Furr reasoned that "if a Defendant is not negligent under at least one explanation of the evidence, then circumstantial evidence cannot satisfy the Plaintiff's burden." Al-Saray responded that the evidence supported a finding that Furr failed to keep a proper lookout or slow

3

down to avoid the collision.  The trial court denied the motions to strike, as well as Furr's motion for reconsideration, stating that "there is some circumstantial evidence to support the failure to maintain a lookout theory of the case."

After Furr presented her evidence, she again moved to strike the evidence, arguing that the evidence was insufficient to make out a prima facie case of negligence.  The trial court denied the motion.

At the close of evidence, the parties discussed their proposed jury instructions.  The parties were able to agree on a majority of the instructions, including Jury Instruction 30, which discussed a driver's duty to yield to vehicles already lawfully in an intersection.[2]  After both parties made their closing arguments, the matter was submitted to the jury.  The jury subsequently returned a verdict in favor Al-Saray and awarded her $7,000,000.

Furr appealed to the Court of Appeals, raising a number of issues including the sufficiency of the evidence.  In an unpublished split decision, the Court of Appeals majority reversed the decision of the trial court and ordered that the case be dismissed.  *Furr v. Al-Saray*, No. 0198-22-4, 2023 Va. App. LEXIS 313 (May 16, 2023).  The Court of Appeals majority

---

[2] Other instructions that were agreed upon by the parties stated that, although the jury may not speculate, "[a]ny fact that may be proved by direct evidence may be proved by circumstantial evidence" and that the jury "may draw all reasonable and legitimate inferences and deductions from the evidence."  The parties also agreed that the jury should be instructed that, "[i]f two or more persons are negligent, and the negligence of each is a proximate cause of Ms. Al-Saray's injury, then each is liable to Ms. Al-Saray for her injury."

Additionally, there were some instructions where the parties were generally in agreement about the premise of the instruction but disagreed about the wording.  One example of this was the instruction related to the duty to keep a proper lookout.  The trial court opted to accept Furr's version of the instruction, which instructed the jury that "[t]he duty to keep a proper lookout requires a driver to use ordinary care to look in all directions for vehicles that would affect her driving, to see what a reasonable person would have seen, and to react as a reasonable person would have acted to avoid a collision under the circumstances."

determined that Al-Saray's evidence was "purely circumstantial" and "failed to make out a prima facie case [of negligence] because the circumstantial evidence she presented did not establish that [Furr], even if in breach of a duty owed, was a proximate cause of the accident." *Id.* at *19. Specifically, the Court of Appeals majority faulted Al-Saray for failing to prove the "location, movement, and speed of Spurlock's vehicle in the four seconds leading up to the crash." *Id.* at *22. It determined that the evidence merely suggested one of three "equally plausible theories of causation:" (1) Furr was the sole proximate cause of the accident, (2) Furr's and Spurlock's actions were each a proximate cause, thus rendering them joint tortfeasors, or (3) Furr was not a proximate cause at all, notwithstanding her failure to keep a proper lookout. *Id.* at *24-24. According to the Court of Appeals majority, "the unknown role that Spurlock played in the crash is the crucial missing link in [Al-Saray's] evidence, without which the jury's determination of proximate cause could only have been based on impermissible speculation." *Id.* at *26. Having determined that the evidence was insufficient, the Court of Appeals majority concluded that it did not need to address the other issues raised by Furr on appeal.[3] *Id.* at *13-14.

The dissenting Court of Appeals judge opined that the evidence supported a reasonable inference of causation that rose beyond mere speculation and was properly left for the jury to decide. *Id.* at *35. The dissent largely focused on a few undisputed facts: (1) Burke, traveling in the same direction and lane as Furr, noticed Spurlock's vehicle even before it turned; (2) Furr's statement that she had 300-400 feet of unobstructed view; and (3) Furr struck Spurlock in the rear, passenger's side of the vehicle, indicating that the vehicle had already crossed multiple lanes before the collision and was almost through the intersection. *Id.* at 30-31. Considering this

---

[3] For the reasons stated below, we do not address these other issues at this time. Rather, these issues will be addressed by the Court of Appeals on remand.

evidence, the dissent concluded it was reasonable for a factfinder to infer Furr "would have noticed other vehicles on the roadway, most crucially Spurlock's, and could have taken some precautions that would have made it possible to avoid the accident," including slowing down "even slightly," if she had been wearing her glasses or otherwise paying attention to her surroundings. *Id.* at 34.

Al-Saray appeals.

## II. ANALYSIS

### A. Sufficiency of the Evidence

On appeal, Al-Saray argues that the Court of Appeals erred in ruling that the evidence was insufficient to establish that Furr's negligence was a proximate cause of the accident. She claims the Court of Appeals failed to view the evidence in the light most favorable to her and improperly limited its consideration of the facts to the last four seconds before impact. Furr, on the other hand, insists that the Court of Appeals correctly determined that the evidence was insufficient because the evidence only demonstrated that her negligence was one possible cause of the accident. We agree with Al-Saray.

> It is well-settled that "a party who comes before us with a jury verdict approved by the circuit court 'occupies the most favored position known to the law.'" *Ravenwood Towers, Inc. v. Woodyard*, 244 Va. 51, 57 (1992) (citations omitted). "As a general rule, [w]e will not set aside a [circuit] court's judgment sustaining a jury verdict unless it is 'plainly wrong or without evidence to support it.'" *Parson v. Miller*, 296 Va. 509, 523-24 (2018) (citing *Fruiterman v. Granata*, 276 Va. 629, 637 (2008) (quoting Code § 8.01-680)). Where, as here, the circuit court has "declined to strike the plaintiff's evidence or to set aside a jury verdict, the standard of appellate review in Virginia requires this Court to consider whether the evidence presented, taken in the light most favorable to the plaintiff, was sufficient to support the jury verdict in favor of the plaintiff." *Id.* at 523-24 (citing *Bitar v. Rahman*, 272 Va. 130, 141 (2006)).

*Northern Va. Kitchen, Bath & Basement, Inc. v. Ellis*, 299 Va. 615, 622 (2021).

6

"All negligence causes of action are based on allegations that a person having a duty of care to another person violated that duty of care through actions that were the proximate cause of injury to the other person." *Steward v. Holland Family Props., LLC*, 284 Va. 282, 286 (2012). "The elements of an action in negligence are a legal duty on the part of the defendant, breach of that duty, and a showing that such breach was the proximate cause of injury, resulting in damage to the plaintiff." *Blue Ridge Serv. Corp. v. Saxon Shoes, Inc.*, 271 Va. 206, 218 (2006). "The proximate cause of an event is that act or omission which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the event, and without which that event would not have occurred." *Beale v. Jones*, 210 Va. 519, 522 (1970). Importantly, proximate cause may be established by circumstantial evidence, provided that such evidence is "sufficient to show that the causation alleged is 'a probability rather than a mere possibility.'" *Bussey v. E.S.C. Rests. Inc.*, 270 Va. 531, 536 (2005) (quoting *Southern States Coop. v. Doggett*, 223 Va. 650, 657 (1982)).

> Negligence is generally a jury question, not only where there is a conflict in the evidence with relation to the existence of the facts from which negligence may be inferred, but also where there is room for difference of opinion between reasonable men as to the inferences which might fairly be drawn from conceded facts.

*Bly v. Southern Ry. Co.*, 183 Va. 162, 171 (1944).

Similarly, "proximate cause is a question for the jury. It becomes one of law only when the minds of reasonable men could not differ." *Duncan v. Hixon*, 223 Va. 373, 376 (1982); *see also Griffin v. Shively*, 227 Va. 317, 320 (1984) ("Generally, negligence . . . and proximate cause are issues for a jury's resolution. They only become questions of law to be determined by a court when reasonable minds could not differ.").

Furthermore,

> "It is not the function of a court to search the record for conflicting circumstantial evidence in order to take the case away from the jury on a theory that the proof gives equal support to inconsistent and uncertain inferences. The focal point of judicial review is the reasonableness of the particular inference or conclusion drawn by the jury. It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable."

*Bly*, 183 Va. at 175 (quoting *Tennant v. Peoria & Pekin Union Ry. Co.*, 321 U.S. 29, 35 (1944)).

Analyzing the facts of this case, the Court of Appeals majority concluded that the "evidence merely creates three equally plausible theories of causation," one of which exonerates Furr. *Furr*, 2023 Va. App. LEXIS 313, at *23-24. Specifically, the Court of Appeals majority posited that Spurlock might have "hesitate[d] even for just a second, before suddenly darting into [Furr's] path, thus depriving [Furr] of any opportunity to react in time to avoid the crash." *Id.* at *23. According to the Court of Appeals majority, the existence of this possible alternative explanation for the accident suggests that the jury's verdict was necessarily the product of speculation and conjecture. Stated another way, the evidence was insufficient because Al-Saray failed to exclude every explanation that might exonerate Furr as a proximate cause. This was error.

The question before the Court of Appeals was not whether the circumstantial evidence excluded all possible inferences related to causation. Under our jurisprudence, when a jury verdict is based on circumstantial evidence, "[i]t is not necessary that the circumstances establish negligence as the proximate cause with such certainty as to exclude every other possible conclusion." *Bly*, 183 Va. at 176. "All that is required is that a jury be satisfied with proof which leads to a conclusion with probable certainty where absolute logical certainty is

8

impossible." *Id.* Therefore, the question that the Court of Appeals should have addressed was whether the inference that served as the basis for the jury's verdict was reasonable in light of the evidence.

Additionally, we cannot overlook the fact that the Court of Appeals majority opinion appears to have viewed the facts in favor of Furr. The Court of Appeals majority stated that "[t]he evidence shows *only* that Spurlock failed to yield the right-of-way to [Furr] when making her left-hand turn." *Furr*, 2023 Va. App. LEXIS 313, at *23-24 (emphasis added). The evidence also showed that Spurlock was actually in the intersection before Furr, and she had crossed almost three lanes of traffic before her vehicle was struck. Based on this, the jury could have reasonably found that it was Furr who failed to yield the right-of-way. Indeed, the jury was instructed to consider this possibility, as both parties agreed to Jury Instruction 30, which states:

> A driver facing a green light shall move in the direction of the signal, except that she has a duty to yield to other vehicles and pedestrians lawfully within the intersection. In proceeding through the intersection, she has a duty to exercise ordinary care. If a driver fails to perform these duties, then she is negligent.[4]

It is further worth noting that the Court of Appeals majority's analysis appears to have been based on a narrow view of the evidence, focusing only on the actual evidence to the exclusion of circumstantial evidence and the inferences that can logically be drawn therefrom. According to the Court of Appeals majority, "there was no conflict in witness testimony for the jury to resolve because no one from either vehicle testified at trial and there were no other eyewitnesses to the collision itself or physical evidence to explain why the crash happened."

---

[4] Where, as here, both parties agree to a jury instruction, that instruction "become[s] the law of the case and thereby bind[s] the parties in the trial court and this Court on review." *Owens-Illinois, Inc. v. Thomas Baker Real Estate, Ltd.*, 237 Va. 649, 652 (1989). Thus, while we take no position as to whether Jury Instruction 30 presents a correct statement of the law, we – and the Court of Appeals – are bound by it as the applicable law in this case.

9

*Furr*, 2023 Va. App. LEXIS 313, at \*21. If the analysis is limited to only the four seconds after Burke turned into the shopping center, the Court of Appeals majority is correct, and the evidence is insufficient to establish anything other than the fact that two vehicles collided. Again, such a limited view of the facts can hardly be described as being viewed in the light most favorable to the prevailing party.

Rather, when the entire sequence of events is viewed in the light most favorable to Al-Saray, we conclude that the evidence was sufficient to support the jury's verdict in this case. The record establishes that, approximately eight seconds before the accident, on a clear sunny day with dry conditions, Spurlock's vehicle was at "the left boundary of the left thru lane," proceeding into the second of the four westbound lanes. In other words, eight seconds before impact, Spurlock's vehicle was already a quarter of the way through the westbound side of the intersection. Spurlock's vehicle was further described as "completely visible" in the intersection. At that same point in time, Furr's vehicle was traveling at 45 miles per hour, placing her approximately 528 feet from the intersection.[5] By her own admission, Furr had several hundred feet of unobstructed view of the roadway, but she never saw Spurlock's "completely visible" vehicle already in the intersection and she made no effort to brake or otherwise avoid the ensuing impact.

---

[5] According to Code § 46.2-880, traveling at 45 miles per hour is the equivalent to traveling at 66 feet per second. Therefore, multiplying 66 feet by eight seconds should give the approximate distance between Furr's vehicle and the intersection at the time Burke first saw Spurlock's vehicle: 528 feet.

We further note that, unlike the table of stopping distances also found in Code § 46.2-880, the tables addressing vehicle speed do not require an inquiry into the vehicle condition or highway conditions. This is because converting miles per hour into feet per second is entirely the product of a mathematical formula.

The point of impact is also an important factor in this analysis. Notably, the evidence demonstrates that Furr's vehicle struck the rear passenger side door of Spurlock's vehicle. As Judge AtLee points out in his dissenting opinion in the Court of Appeals, this means that "[m]ost of Spurlock's vehicle had to have already crossed directly in front of [Furr's] vehicle in order for her to strike the rear portion of the vehicle." *Furr*, 2023 Va. App. LEXIS 313, at *31.

From this evidence, a jury could reasonably infer that Furr's failure to keep a proper lookout and/or her failure to yield to Spurlock was a proximate cause of the accident.[6] It is a reasonable inference that, had Furr been keeping a proper lookout, she would have seen Spurlock and taken some sort of evasive action. Further, given the point of impact on Spurlock's car, it is logical to infer that any form of evasive action by Furr would have avoided the accident. Accordingly, we will reverse the Court of Appeals' determination that the evidence was

---

[6] We note that, in reaching the opposite conclusion, the Court of Appeals majority primarily relied on cases where there was either no jury verdict because the lower court granted a motion to strike, *Cooper v. Whiting Oil Co.*, 226 Va. 491, 495 (1984) (motion to strike granted after the plaintiffs concluded presenting their evidence); *Weddle v. Draper*, 204 Va. 319, 320 (1963) (motion to strike granted after the all evidence was presented), or the lower court set aside a jury verdict because the expert witness's testimony was stricken, *Bussey v. E.S.C. Rests. Inc.*, 270 Va. 531, 536 (2005). For obvious reasons, our standard of review in those cases differs significantly from cases such as this one, where a jury verdict has been secured in favor of one party or the other.

Similarly, the Court of Appeals majority's reliance on our decision in *Elliott v. Anderson*, 208 Va. 753 (1968), is misplaced. In *Elliott*, the only evidence indicating what happened in the accident was supplied by the defendant. *Id.* at 755. Notwithstanding the fact that the defendant's testimony indicated that he was not negligent, the jury found in favor of the plaintiff. *Id.* at 756. This Court reversed because the jury could only have found for the plaintiff if it disregarded the defendant's testimony, the absence of which left nothing to indicate how or why the accident occurred. In other words, *Elliot* was a case where no evidence was presented which could serve as a reasonable basis for the jury's verdict and, therefore, the verdict must have been based in speculation or conjecture. The same cannot be said about the present case. Thus, contrary to the Court of Appeals majority's analysis, *Elliott* is hardly analogous to the present case.

insufficient to support a jury verdict finding that Furr was negligent and that her negligence was a proximate cause of the accident.

## III. CONCLUSION

For the foregoing reasons, we will reverse the judgment of the Court of Appeals as to the sufficiency of the evidence. As Furr's assignments of cross-error were raised – but never addressed – in the Court of Appeals, we will remand the case to allow the Court of Appeals the opportunity to address those matters.

*Reversed and remanded.*