## Richmond

## NORFOLK AND WESTERN RAILWAY COMPANY V. RONALD L. WRIGHT.

November 24, 1976.

Record No. 751275.

Present, I'Anson, C.J., Carrico, Harman, Poff and Compton, JJ.

*James F. Johnson (Woods, Rogers, Muse, Walker & Thornton,* on brief), for plaintiff in error.

*C. Richard Cranwell (Pedigo, Cranwell, Flora & Selbe,* on brief), for defendant in error.

POFF, J., delivered the opinion of the court.

Defendant, Norfolk and Western Railway Company, appeals from a final order confirming a jury verdict awarding plaintiff, Ronald L. Wright, $42,500 in damages on account of personal injuries sustained in a train-automobile collision. Defendant assigns error to the trial court's action overruling its two motions to strike plaintiff's evidence and its motion to set aside the verdict.

At approximately 3:15 a.m. on March 11, 1972, plaintiff was a passenger on the right front seat of a station wagon operated by Joseph Calvin Meador, Sr. Meador, plaintiff, and three other occupants of the vehicle had spent several hours together visiting four restaurants in the Roanoke area. Meador was driving south on Ninth Street in Roanoke, approaching the point the street crosses five railroad tracks running east and west. On the north side of the crossing was an automatic signal gate painted with red and white stripes and equipped with three red lights designed to flash on and off when the gate was lowered across Ninth Street. Two additional flashing red lights and a bell were mounted on the post supporting the gate. The post also supported three signs, one (a conventional cross-buck) reading "Railroad Crossing", another reading "5 Tracks", and the third reading "Stop on Red Signal".

Plaintiff testified that when the station wagon arrived at the crossing, the gate was down and the red lights were flashing. One of the passengers "said something about racing the train". Meador "come on up to the gate and slowed down like he was going to stop" but "just kind of eased out." Plaintiff warned Meador not to "go around that gate", and when "he just kept on easing out" he told Meador "if you're going to go across that track, you make sure there isn't nothing coming." Meador maintained a constant speed of "maybe five miles an hour, just walking speed." Looking first to his right, plaintiff "never saw the train or the light or heard [a] whistle or . . . bells ringing on the train." When he looked back to his left "the train was coming into the side of the car."

The evidence showed that Meador crossed three tracks before reaching the fourth track along which the westbound train was proceeding. The train struck the station wagon "just front of the [left] front door", and the point of impact was 75 feet south of the barricade. The weather was clear and the temperature was 26 degrees. Meador was killed in the collision. A postmortem blood analysis showed an alcohol weight content of 0.13 percent. A toxicologist testifed that when this quantity is present:

"a person's reflexes are slowed, a person's judgment is impaired, coordination and fine test is impaired. And a symptom known as nystagmus, which is a tendency for the eyes not to focus for periods of time varying from seconds to

longer than that — perhaps, as long as five or six seconds — is also seen."

Christopher Firebaugh, a motorist who stopped his car at the gate behind Meador's station wagon, testified that the gate was down and the lights were flashing; that he saw the headlight of the approaching train; that Meador was traveling "just three-five miles an hour" as he drove around the gate; and that while he had not heard a bell or train whistle, "it was cold that night, and the windows were up, and I had a tape player going."

The testimony of the engineer, S. J. Daniel, concerning physical-facts was not contradicted. The train approached the crossing at a constant speed of 10 m.p.h. The headlight had been recently cleaned and was burning brightly, and the engine's bell, which had been actuated 500 to 600 feet east of the crossing, rang continuously until after the collision. When the train was 100 to 110 feet from the crossing, Daniel saw the station wagon just inside the gate and approximately 50 feet from the westbound track. Daniel did not blow the whistle and did not apply the emergency brakes until "the last second." "[A]s far as I was concerned," he said, "there was no emergency until the last second." Daniel thought Meador was going to stop because he was traveling so slowly, "[j]ust like somebody going to roll up to a stop sign and stop."

At trial, Daniel testified: "I don't think anything I could have done would have stopped that train and prevented that accident." Impeaching that testimony, plaintiff showed that, on discovery deposition, Daniel had stated: "Had I known he wasn't going to stop, I could have stopped." Admitting that statement, Daniel said that he had later returned to the scene of the accident and "given it more thought". Reaffirming his trial testimony, Daniel explained that when the emergency brakes are applied "it takes nine seconds for the full brake application to reach throughout the train."

Frank Clifford Miller, a certified professional engineer, testified that, at a rate of 10 m.p.h., an object will travel 14.7 feet per second or approximately 132 feet in nine seconds. Miller discussed the design and function of the emergency braking system and the purpose and effect of the nine-second time lag. On brief, defendant interprets Miller's testimony to mean that, after application of the emergency brakes, "the brakes would not have begun to slow the train for nine seconds". Plaintiff, on the

other hand, reads Miller's testimony to mean that "there must be some braking effect prior to the elapse of the full nine seconds", and that "the train could have been slowed prior to impact." As transcribed, Miller's testimony is unclear. For purposes of this opinion, we accept plaintiff's interpretation.

The central issue is whether the evidence was sufficient to prove primary negligence and causal connection. In support of the trial court's rulings, plaintiff argues that the evidence showed, first, that defendant's agent Daniel was guilty of negligence in failing to blow the whistle and in delaying application of the brakes and, second, that such negligence proximately contributed to the collision and plaintiff's injuries.

Defendant argues that Daniel's conduct was not negligent because he was entitled to rely upon the presumption "[t]hat a person approaching a railroad crossing will stop and not go upon the railroad track immediately in front of a moving engine in plain view. . . ." *Southern Railway Co.* v. *Daves,* 108 Va. 378, 384, 61 S.E. 748, 749 (1908). This presumption, defendant says, prevails even when plaintiff is observed inside a lowered crossing gate, *Norfolk & W. R. Co.* v. *Sink,* 118 Va. 439, 87 S.E. 740 (1916), or running rapidly toward the crossing, *Nichols* v. *Southern Ry. Co.,* 187 Va. 89, 45 S.E.2d 913 (1948), and is reinforced when, as here, plaintiff is observed approaching the crossing slowly, *Washington, Etc., Ry.* v. *Thompson,* 136 Va. 597, 118 S.E. 76 (1923).

Plaintiff responds that the presumption is not absolute; that it survives only in the absence of "superadded circumstances sufficient to charge an ordinarily prudent man with a sense of danger", *Director General* v. *Blue,* 134 Va. 366, 380 (rehearing), 109 S.E. 482 (1921), 114 S.E. 557, 559 (1922); and that once Daniel saw that Meador had disregarded the auditory, visual, and written warnings, violated the barricade, and continued at a constant speed toward the westbound track, Daniel was charged "with a sense of danger" and, at that point, lost the right to rely upon the presumption. Plaintiff concludes that, without benefit of the presumption, Daniel's omissions constituted negligence.

We assume, without deciding, that the evidence was sufficient to prove primary negligence. Yet, we are of opinion that plaintiff failed to prove by a preponderance of the evidence that Daniel's failure to blow the whistle or his delay in applying the brakes proximately contributed to the accident.

■ Daniel was exempt from the statutory duty to blow a whistle, because the accident occurred inside Roanoke's corporate limits. Code § 56-414 (Repl. Vol. 1974); *N. and W. Ry. Co.* v. *Gilliam*, 211 Va. 542, 545-46, 178 S.E.2d 499, 502-03 (1971). He was under a common law duty to do so only if other signals were insufficient and a whistle was necessary "to give adequate, reasonable and timely warning". *Id.*, 211 Va. at 546, 178 S.E.2d at 503.

The weather was cold, and plaintiff asserts that Daniel should have realized that Meador's windows were closed, that he could not hear the two bells, and that a whistle was necessary to fulfill his common law duty. The breach of that duty, plaintiff argues, was a contributing cause of the collision. Plaintiff's argument depends entirely upon companion inferences, *viz.*, that, hearing a whistle, Meador would have taken preventive action and that such action would have been effective. There is no evidence to support such inferences. Indeed, all the evidence compels contrary conclusions. Meador's utter disregard of the written signs and flashing red lights and his deliberate violation of the barricade raise the inference that he would have ignored a whistle as well. Even if Daniel had blown the whistle and Meador had attempted preventive action, the fair inference is that a person whose "reflexes are slowed", whose "judgment is impaired", whose "coordination and fine test is impaired" and whose eyes lose the power to "focus" would be mentally unable to make a rational decision and physically unable to execute it effectually.

We hold that plaintiff failed to carry his burden of proving that Daniel's failure to blow the whistle was causally related to the accident.

■ We consider now whether the evidence was sufficient to prove that Daniel's delay in applying the emergency brakes proximately contributed to the accident.

Plaintiff introduced no evidence that the train could have been *stopped* before it reached the crossing. Daniel's prior inconsistent statement was competent only to impeach the credibility of his testimony at trial "and not as evidence on any fact touching the issue to be tried." *Neblett, Adm'r* v. *Hunter*, 207 Va. 335, 340, 150 S.E.2d 115, 119 (1966). But, under plaintiff's construction of Miller's testimony, there was evidence that if Daniel had applied the brakes earlier, he could have *slowed* the train before it

reached the crossing. The jury may have accepted plaintiff's construction and, as we have said, for purposes of this opinion, so do we. Yet, there is nothing in Miller's testimony or in any other evidence to show that Daniel could have applied the brakes soon enough to develop brake cylinder pressure great enough to make the progress of the train slow enough to permit the station wagon to pass safely in front of it.

Plaintiff argues that the evidence supports an inference to that effect. We disagree. Not every inference that springs to mind is legally sufficient. Although *Poor Richard* found causation *in fact* between "the want of a horseshoe nail" and the loss of a kingdom, that relationship does not constitute causation *in law*. The law accords probative effect to an inference drawn from proven facts, but only when its *probability* is reliably authenticated by the lessons mankind has learned from experience with those facts.

> "[I]t is not sufficient to support a recovery that the evidence . . . shows merely a possibility that had the signals been given the accident would not have happened. If it stopped there, the causal connection between the failure to give the signals and the injury would be left merely conjectural; and the burden in these cases, as in all other negligence cases, rests upon the plaintiff to establish the causal connection between the negligence of the defendant and the damage to the plaintiff beyond a mere conjecture. The evidence tending to show causal connection must be sufficient to take the question out of the realm of mere conjecture, or speculation, and into the realm of legitimate inference, before a question of fact for submission to the jury has been made out." *Railway Company* v. *Haley*, 156 Va. 350, 381-82, 157 S.E. 776, 786 (1931).

Here, the evidence left the question of causal connection in the realm of conjecture, and the trial court left the jury free to speculate upon random *possibilities* rather than reasonable probabilities.

We hold that plaintiff failed to prove by a preponderance of the evidence that Daniel's negligence, if any, proximately contributed to the accident; that insofar as the evidence in this record shows, the sole proximate cause of plaintiff's injuries was Meador's negligent conduct; that the trial court erred in overruling defendant's several motions; and that the judgment

will be reversed and final judgment for defendant will be entered here.

*Reversed and final judgment.*

Compton, J., dissenting.

The majority has assumed that the engineer was negligent in delaying application of the brakes and has accepted Miller's testimony that if the brakes had been applied earlier, the speed of the train could have been reduced before it reached the crossing. Yet, my colleagues decide that the evidence left the question of causal connection in the realm of conjecture. I disagree.

Once the foregoing assumed conclusions are accepted — and they have been properly accepted by the majority because, in my opinion, they are fully supported by the evidence — then a judgment that proximate cause was a jury question cannot be avoided.

The train was 100 to 110 feet from the crossing proceeding at ten miles per hour when the engineer first observed the vehicle occupied by the plaintiff. At that instant, the station wagon was 50 feet from the point of impact and already past the activated signal gate. The engineer testified he could have then applied the train brakes in one-tenth of a second, but he did not. The motor vehicle thereafter travelled to the point of collision at a constant speed of five miles per hour, or 7.335 feet per second, and was struck "just beyond the front of the front door". On this evidence, and the majority's assumptions, proximate cause was an issue of fact.

I am of opinion that the trial court properly allowed the jury to consider whether prompt application of the train brakes at the time the engineer first observed the station wagon would have delayed the train's arrival at the collision point enough to have prevented the accident. After all, a mere two-second delay would have enabled the vehicle to travel 14 additional feet and safely through the crossing. Without the negligent failure of the engineer to apply the brakes sooner, the accident would not have occurred. *Chesapeake & Ohio Ry. Co.* v. *Meyer,* 150 Va. 656, 665, 143 S.E. 478, 481-82 (1928).

I would affirm the judgment below.