COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Humphreys, Huff and AtLee
Argued by videoconference


SHARON ELIZABETH FURR

                                                          MEMORANDUM OPINION* BY
v.        Record No. 0198-22-4                            JUDGE GLEN A. HUFF
                                                          MAY 16, 2023

TAMARA AL-SARAY


              FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
                              James A. Willett,[1] Judge

              Julie S. Palmer (Frank E. Hudson, III; David W. Drash; Harman,
              Claytor, Corrigan & Wellman, PC; Tuemer & Drash, on briefs), for
              appellant.

              Douglas B. Wessel (Stephen M. Terpak; Sutter & Terpak, PLLC, on
              brief), for appellee.


        Following trial in the Prince William County Circuit Court (the "trial court"), a jury found

Sharon Furr ("appellant") liable for negligence in connection with a 2014 motor vehicle accident

between appellant's car and another car in which the plaintiff, Tamara Al-Saray ("appellee") was a

passenger.  Appellant raises thirteen assignments of error on appeal, the first of which this Court

finds dispositive of the entire case.  As her primary argument, appellant asserts that the trial court

erred in denying her motion to strike because appellee's evidence was insufficient to establish a

prima facie case of negligence.  Specifically, she argues that appellee did not present evidence

---

        * This opinion is not designated for publication.  *See* Code § 17.1-413.

        [1] Although several different judges were involved during the life of the case, the
Honorable James A. Willett presided over the trial and entered the final judgment from which
appellant appeals.  The Honorable Carroll A. Weimer, Jr., presided over many of the parties'
pre-trial motions in 2021, including the hearings for sanctions and the restriction of witness
testimony, as well as the entry of the nonsuit order for Janaia Spurlock prior to trial.

establishing that appellant's breach of duty was a proximate cause of the car crash. For the reasons below, this Court agrees and finds that the insufficient evidence of causation warrants reversal of the trial court's judgment.

## I. BACKGROUND[2]

On November 10, 2014, at approximately 4:30 p.m., appellant's vehicle crashed into another vehicle driven by Janaia Spurlock ("Spurlock") at the intersection of Wellington Road and Market Place Avenue in Prince William County, Virginia. Wellington Road is a four-lane divided highway with two lanes of traffic in each direction—east and west—and the road slopes slightly uphill as one approaches the intersection with Market Place Avenue from the west. At the time of the accident, the traffic signal at the intersection was a solid green light for vehicles traveling east and west along Wellington Road.

Prior to the collision, appellant was traveling westbound in the right-hand thru lane on Wellington Road at approximately 45 miles per hour, the posted speed limit. Spurlock was traveling eastbound on Wellington Road and attempted to enter the shopping center on Market Place Avenue by making a left-hand turn across appellant's westbound lane of travel. The day was bright and the weather clear. As appellant approached the intersection she was looking straight ahead and had an unobstructed view of approximately 300 to 400 feet in front of her. Nevertheless, appellant claims she did not see anything in her path until she saw a "white blur" just before colliding with Spurlock's vehicle in the middle of the intersection.

---

[2] This Court views the evidence "in the light most favorable" to the prevailing party below, who is "entitled to every reasonable inference" that flows from the evidence after "having obtained a jury verdict, approved by the trial court." *Elliott v. Anderson*, 208 Va. 753, 756-57 (1968); *see N. Va. Kitchen, Bath & Basement, Inc. v. Ellis*, 299 Va. 615, 622 (2021) ("[A] party who comes before us with a jury verdict approved by the circuit court 'occupies the most favored position known to the law.'" (quoting *Ravenwood Towers, Inc. v. Woodyard*, 244 Va. 51, 57 (1992))).

When the two cars collided, the front of appellant's car struck the rear passenger-side door on the right-hand side of Spurlock's vehicle—where appellee was seated. Both Spurlock and appellee were 16 years old at the time of the accident. After impact, appellant's vehicle came to rest on the sidewalk just past the intersection, and Spurlock's car was facing east with its rear up against a light pole and its front in the intersection. Appellee sustained significant physical and neurological injuries as a result of the collision.

Nearly four years later, on March 29, 2018, appellee filed suit against both Spurlock and appellant, seeking compensatory damages for the injuries she sustained in the 2014 crash. Appellee alleged that both defendants were "jointly and severally" liable to her for their combined negligence. However, on October 8, 2021—only five days before trial commenced on October 13, 2021—the trial court granted appellee's motion to nonsuit Spurlock from the case and the trial court granted her motion to amend the case caption with appellant as the sole defendant.

Subsequently, appellee presented extensive evidence during trial to demonstrate that appellant needed to wear her reading glasses to see properly while driving and that she was not, by her own admission, wearing them on the day of accident.[3] Appellee presented no evidence about Spurlock's actions leading up to the crash.

---

[3] In the portions of her deposition testimony entered into evidence during appellee's case-in-chief, appellant stated that the only eyeglasses she had in 2014 were reading glasses and sunglasses. And prior to being prescribed bifocals in 2016, she only wore the sunglasses on a regular basis while driving. However, although appellant claimed she had perfect vision in 2014, she admitted to having worn her reading glasses on several occasions while driving to see street signs. Appellant's granddaughter, Ashley Williams ("Ashley"), corroborated appellant's statements when she testified during the defense's case-in-chief. Appellee did not present any records—from either appellant's eye doctors or the Virginia Department of Motor Vehicles— showing that appellant needed to wear corrective lenses when driving in 2014.

The in-person testimony of appellant's daughter, Tina Williams ("Tina"), and the videotaped testimony of Kim Williams ("Kim")—who described appellant as "the ex-mother-in-law of [her] husband" Ben Williams, who had previously been married to Tina— contradicted appellant's statements. Both Tina and Kim testified that they had seen appellant

- 3 -

Pre-Trial Proceedings

During pre-trial discovery, appellant filed a motion for a Rule 4:10 neuropsychology exam of appellee to be conducted by Dr. Gary Kay.[4]  The trial court granted appellant's request on February 4, 2021, but included in the order a provision granting appellee's request to record the exam.  Dr. Kay refused to comply with that provision and did not conduct the exam.

On March 2, 2021, appellant filed a motion for reconsideration in which she asked the trial court to order a second Rule 4:10 exam, this time by Dr. Jeffrey Wilken.  The trial court granted appellant's request on March 29, 2021, and removed the mandatory recording provision from that second order.  However, in an attempt to prevent any further issues, the trial court required appellant to confirm Dr. Wilken's review of the order and his willingness to abide by its terms.  In particular, the trial court ordered appellee to "submit to an examination by Dr. Jeffrey A. Wilken," but made clear that no "substitute examiner" could conduct the exam unless appellant first received permission from the court or both parties mutually agreed to the alternate examiner.  Dr. Wilken provided his written assent to those terms.

---

wear glasses while driving on multiple occasions prior to 2014.  Appellee even introduced photos taken from Tina's Facebook account showing appellant wearing a pair of rectangular eyeglasses in different settings prior to 2014.  Although Tina testified that the glasses in the photos were appellant's reading glasses, she also admitted that she would not let her daughter ride in the car with appellant "for safety reasons" unless appellant was wearing her glasses.

On the other hand, Kim testified that during the (at most) 75 times she ever interacted with appellant, all between 2003 and 2014, she saw appellant wearing "traditional bifocals" nearly all the time, including while driving.  She acknowledged, however, that the glasses in the photos from Tina's Facebook account were not bifocals and that she did not have any other photos showing appellant wearing bifocals between 2003 and 2014.

[4] Rule 4:10(a) provides that, "upon motion of an adverse party," the court "may order the party to submit to a physical or mental examination by one or more health care providers" if "the mental or physical condition (including the blood group) of a party . . . is in controversy."  Such an order "may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties."  Rule 4:10(a).  The order "must specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made, and must fix the time for filing the report and furnishing the copies."  *Id.*

Both parties agreed that Dr. Wilken would conduct the exam on June 22, 2021. On that date, appellee arrived timely at the exam location with her attorney around 8:45 a.m. Dr. Wilken, however, was not present and instead sent an associate, Dr. Catherine Bergmann, who informed appellee that she would conduct the first part of the exam and Dr. Wilken would arrive at 11:30 a.m. to conduct the latter half of the examination. Based on this new information, appellee left the exam location after approximately thirty minutes and informed the trial court that Dr. Wilken had violated the court's order.

The parties cross-moved for sanctions, and the trial court granted sanctions in favor of appellee for Dr. Wilken's violation of the court's order that he be the one to conduct the examination. Pursuant to that determination, the trial court ruled that Dr. Wilken would not be allowed to testify as to why he had not conducted an examination. The court then ruled that it would not grant appellant's motion to exclude appellee's evidence of a traumatic brain injury and would not grant a continuance or issue a third order for a Rule 4:10 exam.

At a subsequent hearing, the trial court made several rulings regarding the admissibility of proffered testimony by appellant's expert witnesses. Regarding Dr. Falconer, the trial court prohibited testimony that appellee might have suffered from a "second-hit phenomenon" or that her brain injury could have been caused by a subsequent accident. Similarly, the trial court excluded testimony by Dr. Wilken that the delays in the presentation of appellee's symptoms might be consistent with a different cause, other than the 2014 wreck.

In making those admissibility determinations, the trial court relied on the expert disclosures appellant provided. Based on the language Dr. Falconer and Dr. Wilken used in their reports, the trial court concluded that their opinions were not made to a reasonable degree of medical probability and were thus too speculative for the jury to consider.

After the trial court entered the nonsuit order for Spurlock on October 8, 2021, it ruled that appellant could not offer any evidence that Spurlock had pled guilty to failing to yield in connection with the 2014 accident. Despite appellant's arguments to the contrary, the trial court ruled that any testimony about Spurlock's plea was inadmissible hearsay and there was no other basis for admission of such evidence. The court gave multiple reasons for this ruling, including that Spurlock was no longer a party opponent, the police officer who ticketed Spurlock in 2014 had no independent recollection of the accident or Spurlock's plea, Spurlock denied in her deposition to having been issued a ticket or pleading guilty, and all records of Spurlock's plea were sealed because she was a juvenile. Notwithstanding that ruling, appellant still announced her intention to subpoena Spurlock to testify at trial.

Trial Testimony and Proceedings

Trial commenced on October 13, 2021. Appellee introduced portions of appellant's deposition testimony at trial, as well as in-person testimony from several witnesses; but neither appellee, appellant, nor Spurlock testified in the trial court.[5] In fact, the only other witness who was present at the scene of the accident—Greg Burke ("Burke")—did not see the moment appellant's and Spurlock's vehicles collided.

Burke testified that he had been driving westbound on Wellington Avenue in the right-hand thru lane at approximately 4:30 p.m. on November 10, 2014. When he reached the intersection at Market Place Avenue, he had a solid green traffic light and he moved into the right-hand turn lane so he could turn into the shopping center on his right. As he did so, he saw Spurlock's vehicle in the eastbound left-hand turn lane on Wellington Road. He described her as

---

[5] Appellant subpoenaed Spurlock to testify but when she called for Spurlock to take the stand, the court bailiff informed her that no one waiting outside the courtroom had answered to that name.

having "slowed to a stop or was creeping at that point. . . . She was yielding to me."[6] He did not see appellant's vehicle in the right thru lane behind him.

When Burke started making his right-hand turn, he saw that Spurlock's car "was at a hesitation or barely creeping at that point." Approximately four seconds after he started making that turn, Burke heard the crash of appellant's and Spurlock's vehicles colliding, but he did not see the moment of impact which had occurred behind him. He did not hear any horns honking or brakes screeching in those four seconds. During cross-examination by appellant's counsel, Burke confirmed that at the last time he saw Spurlock's vehicle prior to the crash "she had not yet entered the . . . left thru lane on westbound Wellington Road." He also affirmed that he "did not see whether Ms. Spurlock's vehicle or [appellant]'s vehicle entered the intersection first."

At the close of appellee's case-in-chief, appellant made a motion to strike the evidence on the grounds that it was insufficient to make out a prima facie case of negligence. The trial court denied that motion, along with appellant's motion to reconsider in which appellant drew attention to appellee's choice to call Burke—who saw neither the collision itself nor the manner in which Spurlock entered the intersection—rather than Spurlock herself. Appellant thus argued that, because Burke's testimony did not show that appellant "could have avoided the accident if she maintained a proper lookout," appellee had not presented evidence that would allow the jury to determine whether appellant's actions were a proximate cause of the accident.

Because appellee had "to show that [appellant] could have avoided the accident if she maintained a proper lookout," the complete absence of evidence about how Spurlock entered the intersection was critical to appellee's case. Appellant also made a renewed motion to strike, on the same grounds, at the close of all the evidence. The court denied that motion as well.

_____

[6] To help illustrate Burke's testimony for the jury, appellee's counsel directed Burke to use a diagram of the intersection to point out the locations where he saw Spurlock prior to the crash. That diagram was not made part of the record for this Court to view on appeal.

Prior to jury deliberations, appellant proposed two versions of Jury Instruction T, each of which included different portions of the statutory table of stopping distances in Code § 46.2-880.[7] One version included the complete table in Code § 46.2-880, while the other version requested only the single horizontal row applicable to a speed of 45 miles per hour. The trial court declined to give either version and explained that existing case law required appellant to offer evidence establishing the reliability of each factor in the table as applied to appellant— including condition of the vehicle and roadway—before the contents of that table could be given to the jury. Appellant offered no such evidence.

During closing argument, appellee's counsel stated: "[Y]ou can't go 45 miles an hour into a sitting duck. . . . People get killed. A grandfather gets killed." A few moments later, speaking as if he were appellant, appellee's counsel said: "I drove into another car and I killed a man." Appellee never introduced any evidence that someone died as a result of the accident.[8] A few moments after the second statement, but still during appellee's closing argument, appellant's counsel objected and moved for a mistrial. Appellant argued that appellee's statements were highly prejudicial and inappropriate, especially considering the complete lack of evidence that

---

[7] Code § 46.2-880 instructs all courts to "take notice of the following tables of speed and stopping distances of motor vehicles . . . in actions in which inquiry thereon is pertinent to the issues." The following table includes three categories of information: (1) speed of vehicle (in miles per hour and feet per second), (2) the average stopping distances in feet for automobile brakes and truck brakes, and (3) the total stopping distances in feet for automobiles and trucks in relation to the stopping distance for an average driver with a perception-reaction time of 1.5 seconds. Code § 46.2-880. The statute concludes by stating that "the above table has been constructed, using scientific reasoning, to provide factfinders with an average baseline for motor vehicle stopping distances: (1) for a vehicle in good condition and (2) on a level, dry stretch of highway, free from loose material." *Id.* Although deviations from those average circumstances "do not negate the usefulness of the table," a party relying on such table must provide "additional site-specific examination and/or explanation." *Id.*

[8] The only other time appellee's counsel mentioned a death was when he asked Tina, called as an adverse witness for appellee, whether she had heard "that the other passenger was dead from the accident" and whether appellant had told her "about a man in the front of the car being dead because of the accident." Tina answered both questions in the negative.

appellant had killed anyone. The trial court denied the motion for a mistrial on the sole basis that appellant had waived the objection by not making it contemporaneously with the offending statements.

The jury returned a verdict on October 21, 2021, finding appellant liable for negligence. It awarded appellee $7 million in damages.

Post-Trial Motions

At a post-trial hearing on December 3, 2021, appellant made a motion to set aside the verdict on the grounds that the evidence was insufficient as a matter of law to show that her negligence was a proximate cause of the accident. In particular, she asserted that the jury could not determine whether her conduct was a proximate cause of the accident without knowing when and how quickly or slowly Spurlock entered the intersection. The trial court denied appellant's motion, finding that it "comes down to one of sufficiency to the evidence; not one of a complete absence of evidence" and that the circumstantial evidence was sufficient for the jury to determine that appellant was a proximate cause of the accident.

Appellant also renewed her argument for a mistrial based on appellee's statements during closing arguments, but the trial court denied that motion again on the grounds that it had not been made at the time the words were spoken and thus appellant's objection was waived. The trial court then entered judgment "in the amount of $7 million with interest running as of the date of this order."

Appellant then filed a motion to reduce the amount of her appeal bond from the full amount of the judgment to her insurance liability limit of $500,000 dollars "in order to suspend the execution of the judgment in this case while it is on appeal." In support of that motion, appellant signed an affidavit stating that her only financial asset was the insurance policy. The trial court issued an amended final judgment on January 14, 2022, in which it denied appellant's

request for lack of "good cause" shown and entered final judgment in favor of appellee for the full $7 million. This appeal followed.

## II. ANALYSIS

Appellant raises thirteen assignments of error, grouped into several categories.[9] First and foremost, appellant asserts the trial court erred in denying her motion to strike and subsequent motion to set aside the jury's verdict. She contends that appellee's failure to introduce any evidence of causation precluded appellee from establishing a prima facie case of negligence as a matter of law. As a result, she argues that the case should not have been presented to the jury and the jury's verdict in favor of appellee is contrary to the law because it is based on speculation.

This Court agrees with appellant's position and finds this initial issue dispositive. This case presents the relatively rare instance of there being multiple possible proximate causes of an accident but no evidence upon which a jury could base a finding on the issue of causation. Consequently, because "the doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available,'" this Court declines to address the merits of appellant's remaining assignments of error. *Butcher v. Commonwealth*, 298 Va. 392, 396 (2020) (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017)).

---

[9] The first four assignments of error challenge the sufficiency of the evidence as to the element of causation. The next two concern the trial court's denial of proposed jury instructions. The seventh argues that the trial court erred in denying appellant's motions for a mistrial based on the allegedly prejudicial statements made during appellee's closing argument. Encompassed within the following two assignments of error are multiple allegations that the trial court erred in its rulings regarding sanctions for Dr. Wilken's failure to perform the Rule 4:10 exam on June 22, 2021. The subsequent three arguments appellant makes all relate to the trial court's exclusion of certain witness testimony. Finally, appellant assigns error to the trial court's refusal to set an appeal bond in the amount of $500,000—the amount of her insurance liability limit.

The relevant facts pertaining to each of these assignments of error are included above in the factual summary of the case, despite the fact that this opinion does not address the merits of all of these arguments.

Standard of Review

"As a general rule, [this Court] will not set aside a [trial] court's judgment sustaining a jury verdict unless it is 'plainly wrong or without evidence to support it.'" *N. Va. Kitchen, Bath & Basement, Inc. v. Ellis*, 299 Va. 615, 622 (2021) (quoting *Parson v. Miller*, 296 Va. 509, 524 (2018)); *see also Elliott v. Anderson*, 208 Va. 753, 760 (1968) (quoting *Garrison v. Burns*, 178 Va. 1, 8 (1941)).

Where the trial court has denied a motion "to strike the plaintiff's evidence or to set aside a jury verdict, the standard of appellate review in Virginia requires this Court to consider whether the evidence presented, taken in the light most favorable to the plaintiff, was sufficient to support the jury verdict in favor of the plaintiff." *Ellis*, 299 Va. at 622 (quoting *Parson*, 296 Va. at 523-24). In doing so, this Court considers the legal elements of the offense de novo, but reviews for clear error whether the facts presented are sufficient to prove those elements. *Linnon v. Commonwealth*, 287 Va. 92, 98 (2014). Accordingly, a trial court does *not* err in denying a motion to strike when the plaintiff meets its burden of showing a prima facie case. *Vay v. Commonwealth*, 67 Va. App. 236, 249 (2017).

Establishing a Prima Facie Case of Negligence

"All negligence causes of action are based on allegations that a person having a duty of care to another person violated that duty of care through actions that were the proximate cause of injury to the other person." *Steward ex rel. Steward v. Holland Fam. Props., LLC*, 284 Va. 282, 286 (2012). Thus, to establish a prima facie case of negligence, a plaintiff must offer sufficient evidence as to all four legally distinct elements: "a legal duty on the part of the defendant, [a] breach of that duty, and a showing that such breach was the proximate cause of injury, resulting

in damage to the plaintiff."[10]  *Blue Ridge Serv. Corp. of Va. v. Saxon Shoes, Inc.*, 271 Va. 206, 218 (2006).  The third element, causation, is crucial to the outcome of this appeal.[11]

"The proximate cause of an event is that act or omission which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the event, and without which that event would not have occurred."  *RGR, LLC v. Settle*, 288 Va. 260, 292 (2014) (quoting *Ford Motor Co. v. Boomer*, 285 Va. 141, 150 (2013)); *see also Wells v. Whitaker*, 207 Va. 616, 622 (1966) ("To impose liability upon one person for damages incurred by another, it must be shown that the negligent conduct was a necessary physical antecedent of the damages.").  Factual causation, "often described as the 'but for' or Sine qua non rule," is a necessary "element of proximate cause" and provides that a defendant is not liable for a plaintiff's injury unless such

---

[10] "[D]amages are generally recoverable for the reasonable and proximate consequences of the breach of duty . . . [but] are not presumed."  *Gilliam v. Immel*, 293 Va. 18, 26 n.6, 28 (2017).  That appellee was injured in the collision between appellant's and Spurlock's vehicles is not contested on appeal.

[11] That a plaintiff must offer proof of each element—both to establish a prima facie case and to support a verdict of liability—steadfastly remains the controlling law in Virginia, despite the tendency of courts to colloquially use the term "negligence" (or sometimes "primary negligence") when jointly referring to only the first two elements, duty and breach.  *See, e.g.*, *RGR, LLC v. Settle*, 288 Va. 260, 275 (2014) ("Negligence, in law, involves the conception of a duty to act in a certain way toward others, and a violation of that duty by acting otherwise." (quoting *Cleveland v. Danville Traction & Power Co.*, 179 Va. 256, 260 (1942))); *Norfolk & W. Ry. Co. v. Wright*, 217 Va. 515, 518 (1976) ("The central issue is whether the evidence was sufficient to prove primary negligence and causal connection.").  This conversational turn of phrase does *not*, however, render the causation element superfluous when considering whether a plaintiff has met their burden to establish a prima facie case of negligence.  *See Farren v. Gilbert*, 224 Va. 407, 412 (1982) ("Negligence constitutes an actionable tort only when it is shown to be the proximate cause of an injury.").

By that same standard, defendants who raise the defense of contributory negligence against a plaintiff must demonstrate "that the plaintiff's negligence 'was a proximate or concurring cause that contributed directly to the accident.'"  *Estate of Moses ex. rel. Moses v. Sw. Va. Transit Mgmt. Co., Inc.*, 273 Va. 672, 680 (2007) (quoting *Thomas v. Settle*, 247 Va. 15, 20 (1994)); s*ee also RGR*, 288 Va. at 284 ("[J]ust as a plaintiff is required to establish a prima facie case of negligence, a defendant who relies upon the defense of contributory negligence must establish a prima facie" showing "that the plaintiff was negligent and that such negligence was a proximate cause of the accident." (alteration in original) (quoting *Rascher v. Friend*, 279 Va. 370, 375 (2010))).

harm would not have occurred "but for [defendant's] negligent act." *Wells*, 207 Va. at 622. As a result, the term "proximate cause" represents a "descriptive phrase for the limits the law has placed upon an actor's responsibility for his conduct." *Id.*

In the context of vehicular accident cases, the Supreme Court has repeatedly held that "[n]egligence cannot be presumed from the mere happening of an accident. The burden is on the plaintiff . . . to produce evidence of preponderating weight . . . that the defendant was guilty of negligence which was a proximate cause of the accident." *Elliott*, 208 Va. at 757 (quoting *Weddle v. Draper*, 204 Va. 319, 322 (1963)); *Wells*, 207 Va. at 622 ("Negligence and an accident, however, do not make a case. As between them there must be a causal connection." (quoting *Hawkins v. Beecham*, 168 Va. 553, 561 (1937))). To satisfy that burden, the plaintiff must "show why and how the accident happened, and if that is left to conjecture, guess or random judgment, he cannot recover." *Blue Ridge*, 271 Va. at 218 (quoting *Weddle*, 204 Va. at 322); *see also Bridgeforth v. Gibbs*, 207 Va. 127, 134 (1966) (finding the jury's verdict "improperly based upon conjecture and speculation" where plaintiff did not carry burden "of showing where, how and why the accident occurred").

Thus, although the issue of proximate cause is generally a question of fact to be resolved by the jury, "[t]he evidence tending to show causal connection must be sufficient to take the question out of the realm of mere conjecture, or speculation, and into the realm of legitimate inference, before a question of fact for submission to the jury has been made out." *Virginian Ry. Co. v. Haley*, 156 Va. 350, 381-82 (1931). "Not every inference that springs to mind is legally sufficient." *Norfolk & W. Ry. Co. v. Wright*, 217 Va. 515, 520 (1976). In the absence of sufficient evidence of causation, a prima facie case of negligence does not exist as a matter of law, despite the existence of evidence establishing that the defendant breached a duty owed to plaintiff. *See, e.g.*, *Blue Ridge*, 271 Va. at 218-19 (holding that the trial court "abused its

- 13 -

discretion when it denied" defendant's motion to strike plaintiff's evidence and submitted the case to the jury in the "absence of a prima facie case of negligence").

An example of the strict operation of this rule is the Supreme Court's holding in *Cooper v. Whiting Oil Co., Inc.*, 226 Va. 491, 496 (1984). Despite finding that defendant was "negligent" in its actions after plaintiff provided notice of a leak in a gasoline tank on her property, the Court found that "there was no evidence that such negligence was a proximate cause of the damages to the Landowners' properties." *Id.* The Court explained that, because "[t]here was no evidence as to the amount of gasoline that leaked into the ground *before*" plaintiff's notification, "the jury could not determine what damages resulted from gasoline leaking from the tank *after* [defendant] negligently refilled it." *Id.* (emphases added). The Court thus affirmed the trial court's decision to grant defendant's motion to strike plaintiff's evidence.[12] *Id.* at 497.

In accordance with that legal principle, the Supreme Court has consistently held that plaintiffs relying on circumstantial evidence to make out a prima facie case, like in the case at hand, must ensure that such evidence is "sufficient to show that the causation alleged is 'a probability rather than a mere possibility.'" *Bussey v. E.S.C. Rests., Inc.*, 270 Va. 531, 536 (2005) (quoting *S. States Coop. v. Doggett*, 223 Va. 650, 657 (1982)). As particularly relevant to this case, "circumstantial evidence must show more than that the accident resulted from one of two causes, for one of which the defendant is responsible and for the other of which he is not." *Cooper*, 226 Va. at 496; *Sneed v. Sneed*, 219 Va. 15, 18 (1978); *see also Vaughn v. Huff*, 186 Va. 144, 153 (1947) (finding that, in the absence of necessary facts, no prima facie case of

---

[12] Based on the same rationale—that the plaintiff failed to make out a prima facie case of negligence due to insufficient evidence of causation—the Supreme Court found in *Weddle*, 204 Va. 319, and *Sneed v. Sneed*, 219 Va. 15 (1978), respectively, that the trial court did not err in granting defendant's motion to strike and in setting aside the jury's verdict for plaintiff.

negligence had been shown where "the accident may have been attributable to one of several causes, for some of which the driver of the car was responsible and for some of which he was not responsible"). Otherwise, where the evidence does not provide a basis for differentiating between equally probable causes other than "conjecture, guess, or random judgment," the jury's verdict will be impermissibly based on an arbitrary choice not grounded in the evidence and thus contrary to the law. *Town of West Point v. Evans*, 224 Va. 625, 628 (1983); *see also Elliott*, 208 Va. at 757 (holding that inferences "must be based on facts, not on presumptions" (quoting *Weddle*, 204 Va. at 322)).

In applying that rule to the facts here, as discussed below, this Court finds that appellee failed to make out a prima facie case because the circumstantial evidence she presented did not establish that appellant, even if in breach of a duty owed, was a proximate cause of the accident.

Appellee's Evidence Insufficient to Establish Proximate Cause

Even assuming that appellee's evidence was sufficient to establish the first two elements of duty and breach, the purely circumstantial evidence was nevertheless insufficient to show that appellant was a proximate cause of the accident.[13] Therefore, as a matter of law, appellee did not present a prima facie case of negligence and the trial court erred in denying appellant's motion to strike.

This Court readily acknowledges that there is sometimes a thin line dividing the cases in which evidence of causation is sufficient to establish a prima facie case, thus warranting resolution by a jury, and those in which it is not. *See RGR*, 288 Va. at 293 ("In resolving the question of proximate causation, '[e]ach case necessarily must be decided upon its own facts and

---

[13] *See, e.g.*, *Wright*, 217 Va. at 518 ("We assume, without deciding, that the evidence was sufficient to prove primary negligence. Yet, we are of opinion that plaintiff failed to prove by a preponderance of the evidence that" the primary negligence of defendant's agent "proximately contributed to the accident.").

circumstances.'" (alteration in original) (quoting *Banks v. City of Richmond*, 232 Va. 130, 135 (1986))). Indeed, the Supreme Court has a long history of addressing the distinctions between those two lines of cases.[14] According to that precedent, the case at hand falls squarely into the second category because appellee presented no evidence that would permit a jury to resolve the question of proximate cause without resorting to speculation. As previously stated, although a jury may properly weigh evidence and assess witness credibility, it may not engage in speculation or make inferences that do not arise from the facts presented. *See, e.g.*, *Burton v. Commonwealth*, 58 Va. App. 274, 283 (2011) (holding that the trier of fact "determine[s] what inferences are to be drawn from proved facts, provided the inferences are reasonably related to those facts" (quoting *Beck v. Commonwealth*, 2 Va. App. 170, 176 (1986))).

This point is aptly illustrated by the Supreme Court's ruling in *Sykes v. Langley Cabs, Inc.*, 211 Va. 202 (1970), that the question of proximate cause was properly left in the hands of the jury because the answer depended upon which witness's testimony the jury found more

---

[14] *Compare Sykes v. Langley Cabs, Inc.*, 211 Va. 202, 208 (1970) ("[I]t is not necessary that the plaintiff negate every theory or possibility that the accident occurred in some manner which would relieve the defendants of liability."), *and Hackley v. Robey*, 170 Va. 55, 61 (1938) ("[T]he admitted physical facts and the undisputed circumstances were such as to warrant the jury in inferring how the accident happened, and that it was the result of the gross negligence of the driver."), *and Brill v. Safeway Stores, Inc.*, 227 Va. 246, 248 (1984) (finding plaintiff's evidence "sufficient to show how and why the accident occurred"), *with McManama v. Wilhelm*, 222 Va. 335, 340 (1981) (finding that plaintiff "failed to show how this accident occurred, and in lieu of probative evidence has relied upon speculation, conjecture, and the piling of inference upon inference"), *and Sneed*, 219 Va. at 17-18 (finding no prima facie case where "[t]o be reasonably inferred from th[e] evidence is either that [deceased] was negligent in driving the vehicle onto the shoulder or that the vehicle left the roadway for some non-negligent reason, such as the driver's sudden illness"), *and Elliott*, 208 Va. at 760 ("[A]lthough a jury may disregard evidence which it does not believe, it cannot find a verdict which is not based on evidence.").

credible.[15]  There, each witness's testimony about the key facts at issue directly contradicted one another, resulting in conflicting theories of proximate cause.  *Id.*  However, each version of events, if believed to the exclusion of the others, provided a complete explanation as to the cause of decedent's death.  *Id.*  Therefore, as the Court recognized, the jury's determination of proximate cause was based upon the direct evidence of the witness whose testimony it credited.[16]  *Id.* at 209 (finding that the jury need not "base an inference upon an inference in order to deduce negligence from the circumstances" where the circumstantial evidence was "not uncertain or indefinite" and did "not rest upon presumption" (quoting *Bly v. S. Ry. Co.*, 183 Va. 162, 175 (1944))).

In complete contrast to those circumstances is the jury's verdict finding appellant liable for the accident that injured appellee.  Here, there was no conflict in witness testimony for the jury to resolve because no one from either vehicle testified at trial and there were no other eyewitnesses to the collision itself or physical evidence to explain why the crash happened.[17]

_____

[15] "Determining the 'credibility of the witnesses and the weight of the evidence' are tasks left 'solely [to] the trier of fact'" whose unique opportunity to observe the demeanor of the witnesses puts it in the best position to resolve conflicts in the testimony.  *Nelson v. Commonwealth*, 73 Va. App. 617, 622 (2021) (alteration in original) (quoting *Wactor v. Commonwealth*, 38 Va. App. 375, 380 (2002)); *see also Robinson v. Commonwealth*, 70 Va. App. 509, 513 (2019).

[16] *See, e.g.*, *Nat'l Union Fire Inc. of Pittsburgh, Pa. v. Bruce*, 208 Va. 595, 598 (1968) (holding that the contradictory testimony of each party's witnesses creates a conflict "to be left to the trier of fact for resolution by a determination of which witness is entitled to greater weight in the testimony he has given").

[17] Unlike the damning physical evidence in *Hackley*, 170 Va. at 61-62, from which the jury could properly infer that the one-car crash "over the eight-inch curb . . . at a very high rate of speed" was the result of the driver's gross negligence, the physical facts appellee presented about this two-car crash do not clearly define each driver's causal connection to the accident. *See Weddle*, 204 Va. at 323-24 ("The physical facts are not so clearly preponderating that the meaning of such facts relied on by the plaintiff is unmistakable.  They do not show why, how and where the collision occurred, and at best they create no more than a possibility of negligence on the part of the defendant.").

Rather, the evidence presented—viewed in the light most favorable to appellee—only establishes, at best, that the two vehicles collided in the intersection during Spurlock's attempt to make a left turn across appellant's lane of travel and that, prior to the crash, appellant had failed to keep a proper lookout because she wasn't wearing her glasses.

But to conclude that appellant was a proximate cause requires evidence that the accident would not have occurred *but for* her failure to keep a proper lookout. Stated another way, if the accident would still have happened even if appellant had worn her glasses and kept a proper lookout, then appellant cannot legally be a proximate cause. *See, e.g.*, *Rascher v. Friend*, 279 Va. 370, 377 (2010) ("[Because] a jury reasonably could have found that [plaintiff] would have had no opportunity to avoid the accident even if he had maintained visual contact with [defendant]'s vehicle[,] . . . the alleged [contributory] negligence on his part would not have been a proximate cause of the accident as a matter of law."). Such a determination, however, cannot be made without knowing the location, movement, and speed of Spurlock's vehicle in the four seconds leading up to the crash. *See McManama v. Wilhelm*, 222 Va. 335, 340 (1981) ("By failing to show where, when and how [decedent] entered the intersection, the plaintiff has failed to show that any negligence of [defendant] was a proximate cause of the accident.").[18]

The evidence shows only that Spurlock failed to yield the right-of-way to appellant when making her left-hand turn. But nothing shows the timing of Spurlock's actions in the four seconds after Burke made his turn. Did she immediately start slowly crossing the westbound lanes of Wellington Road, thus becoming a visible obstacle that appellant had ample opportunity to see and avoid? Or did Spurlock hesitate, even for just a second, before suddenly darting into

---

[18] This Court finds it noteworthy that appellee initially brought suit against both Spurlock and appellant as co-defendants and joint tortfeasors, but nonsuited Spurlock five days before trial. As a result, appellant could no longer offer any of Spurlock's statements as admissions by a party opponent. And Spurlock did not respond to the defense's subpoena to testify at trial despite appellee's claim that she had been in recent contact with Spurlock.

appellant's path, thus depriving appellant of any opportunity to react in time to avoid the crash?

Under the second set of circumstances, appellant's negligence is entirely immaterial to the question of proximate cause because Spurlock's unexpected dash across appellant's lane of travel would have happened too quickly for appellant to avoid the collision by braking or swerving even if she had been wearing her glasses and had kept a proper lookout.[19]

In the absence of such information, appellee's evidence merely creates three equally plausible theories of causation: (1) that appellant was the sole proximate cause of the accident, (2) that appellant's and Spurlock's actions were each proximate causes, thus rendering them joint tortfeasors,[20] or (3) that appellant was not a proximate cause at all, notwithstanding her failure to

---

[19] Appellant did not testify at trial, but appellee entered into evidence a statement from her deposition in which appellant said she did not see Spurlock's vehicle until the moment immediately before the collision, at which point she described having seen a "white blur." Although Spurlock's vehicle being a "white blur" is certainly consistent with a version of events in which she dashes in front of appellant's vehicle at the last second, the more important takeaway here is that this statement does not make it more likely that appellant was a proximate cause of the crash simply because she didn't see Spurlock's vehicle.

Even if she had seen Spurlock's car near the intersection, waiting to make a left-hand turn, appellant was not required to yield to Spurlock nor even slow down unless it became clear that Spurlock constituted a hazard. *See* Code § 46.2-825 (mandating that drivers "intending to turn left within an intersection . . . shall yield the right-of-way to any vehicle approaching from the opposite direction if it is so close as to constitute a hazard"). Moreover, appellant was entitled to assume that Spurlock would not dash in front of her during the four seconds it took appellant to reach the intersection. *See Rascher*, 279 Va. at 377 (holding that plaintiff's "alleged failure to maintain a proper lookout when he had the right of way and could assume that [defendant] would not turn illegally in front of him would only have been contributorily negligent if the evidence established that he could have avoided striking [defendant]'s vehicle upon maintaining a proper lookout").

And although Code § 46.2-823 provides that a driver "traveling at an unlawful speed shall forfeit any right-of-way which he might otherwise have," appellee presented no evidence from which the jury could conclude that appellant was speeding, without relying on other unsupported inferences. *See, e.g.*, *McManama*, 222 Va. at 340 ("We are unwilling to hold that the severity of injuries without further evidence is sufficient to establish excessive speed."). Thus, appellee's evidence does not establish that the accident would not have occurred if appellant had kept a proper lookout and had seen Spurlock's vehicle prior to the crash.

[20] Joint tortfeasors are liable for the entirety of the damages resulting from an injury caused by their separate and individual breach of duties owed to the plaintiff, provided each party's negligence was a proximate cause of the plaintiff's injury. *See, e.g.*, *Via v. Badanes*, 189

keep a proper lookout. The third option exists if Spurlock was the sole proximate cause of the accident, as described above, whereby her intervening negligence would sever the causal connection between appellant's actions and the car crash. *See Kellerman v. McDonough*, 278 Va. 478, 493 (2009) (holding that, for a "subsequent proximate cause" to "relieve a defendant of liability for his negligence[,]" the intervening negligence between defendant's act and plaintiff's injury "must so entirely supersede the operation of the defendant's negligence that it alone, without any contributing negligence by the defendant in the slightest degree, causes the injury" (first quoting *Williams v. Le*, 276 Va. 161, 167 (2008); and then quoting *Atkinson v. Scheer*, 256 Va. 448, 454 (1998))).

The Supreme Court addressed an analogous situation in *Elliott*, 208 Va. 753, where it considered three different equally possible scenarios, based on a single set of limited facts, as to how and why the accident between a truck and pedestrian could have occurred.[21] The Court

---

Va. 44 (1949) (finding that the two-car collision would not have happened unless both drivers were negligent, thus making them both proximate causes). Similarly, both a defendant and a plaintiff could be joint proximate causes of an accident, in which case the plaintiff's contributory negligence would bar his or her recovery from defendant.

However, the legal possibility that "[t]here may be more than one proximate cause of an event" does not dictate such a result in every case where two or more people were involved in a car accident. *Rascher*, 279 Va. at 376. The plaintiff still bears the burden of proving in the first instance that a particular defendant is a proximate cause of the accident. Only once that burden is met can the jury properly determine to what extent each defendant is liable for the plaintiff's damages. *See, e.g.*, *Maroulis v. Elliott*, 207 Va. 503, 511 (1966) ("[W]here separate and independent acts of negligence of two parties are the *direct cause* of a single injury to a third person and it is impossible to determine in what proportion each contributed to the injury, either or both are responsible for the whole injury." (emphasis added) (alteration in original) (quoting *Murray v. Smithson*, 187 Va. 759, 764 (1948))).

[21] From the record in that case, the Court could not determine:

> with any degree of certainty whether decedent had been walking on the east side of Route 1 and was in the act of crossing over to the west when he was struck; or whether decedent started to cross from the west to the east side of the highway and then changed his mind and started back when the accident occurred; or whether he

ultimately concluded that "[t]here are no physical facts in evidence, or conflicts in defendant's testimony which alone, or taken with the physical facts, are sufficient to make out a prima facie case of negligence." *Id.* at 760. Like in *Elliott*, the jury here was left with a single set of facts that raised two conflicting conclusions of liability between which the jury had no way of distinguishing without resorting to conjecture and guesswork. Either appellant was liable for appellee's injuries because her negligence was the sole or joint cause of the crash (causation theories (1) and (2) above), or appellant was not liable because her negligence was not a proximate cause of the crash (causation theory (3) above).

As theorized above, if Spurlock had dashed in front of appellant's vehicle such that no reasonable person exercising due care and keeping a proper lookout could have avoided the collision, then Spurlock becomes a subsequent intervening cause and bars a finding of negligence against appellant. Thus, the unknown role that Spurlock played in the crash is the crucial missing link in appellee's evidence, without which the jury's determination of proximate cause could only have been based on impermissible speculation. *See Weddle*, 204 Va. at 324 ("Any conclusion drawn by a jury that the defendant was negligent in the operation of her automobile at the intersection based on the physical facts, which actually support neither theory of the accident by evidence of preponderating weight, would of necessity be based entirely on conjecture and guess as to why and how the collision occurred."). Accordingly, the trial court erred in allowing the case to reach the jury and in denying appellant's motion to set aside the verdict. *See, e.g.*, *Wright*, 217 Va. at 520 (reversing verdict rendered in favor of plaintiff where

---

was walking either north or south on the west shoulder and defendant ran off the highway and struck him. *Elliott*, 208 Va. at 759.

"the evidence left the question of causal connection in the realm of conjecture, and the trial court left the jury free to speculate upon random [p]ossibilities rather than reasonable probabilities").

For the foregoing reasons, this Court reverses the verdict entered below and enters judgment in favor of appellant.

## III. CONCLUSION

In resolving this case on the best and narrowest grounds, this Court finds the evidence presented at trial insufficient to establish a prima facie case of negligence against appellant. Because appellee did not introduce sufficient evidence of proximate cause, the trial court should have granted appellant's motion to strike rather than allowing the jury to render a verdict based on speculation and conjecture. Therefore, this Court reverses the trial court's judgment and orders the case be dismissed with judgment in favor of appellant.

*Reversed and dismissed.*

AtLee, J., dissenting.

I would find that there was sufficient evidence that appellant's negligence could have been a proximate cause of the accident, and the issue was properly submitted to the jury. Therefore, I respectfully dissent.[22] I agree with the majority that the issue of whether appellant acted negligently is not at issue, and regardless, the evidence of her negligence was overwhelming. I do not agree, however, that there was insufficient evidence, as a matter of law, that her negligence proximately caused the accident and harm to appellee. More specifically, I disagree with the majority's conclusion that the absence of eyewitness testimony about the exact movement of Spurlock's vehicle in the four seconds before the crash meant there was insufficient evidence of proximate cause, requiring the jury to impermissibly speculate. In my view, there was sufficient evidence of appellant's negligence such that the issue of proximate cause was properly before the jury.

The majority holds that the absence of specific testimony as to how Spurlock's vehicle was moving in that sliver of time—the four seconds preceding the collision—means that a factfinder had no evidence upon which to find that appellant's negligence was the proximate cause of the crash. I agree that the moments leading up to the crash are essential, but do not believe we are left without any evidence as to what occurred in that window. I would therefore uphold the jury's verdict.

---

[22] I limit my discussion to the issue of causation, noting only that I would not reverse on those grounds. There are still at least eight additional issues to which appellant assigns error that the majority, deciding on the best and narrowest grounds, does not address. Since any discussion of those additional issues has no effect on the outcome of this case, and a dissent is inherently responsive in nature, I find it unnecessary to resolve those remaining assignments of error in order to explain why I would affirm the entire appeal. *See Commonwealth v. Harley*, 256 Va. 216, 219-20 (1998) ("[T]he courts are not constituted . . . to render advisory opinions, to decide moot questions or to answer inquiries which are merely speculative." (second alteration in original) (quoting *City of Fairfax v. Shanklin*, 205 Va. 227, 229-30 (1964))).

A. *Standard of Review*

"Ordinarily, proximate cause is a question for the jury. It becomes one of law only when the minds of reasonable men could not differ." *Duncan v. Hixon*, 223 Va. 373, 376 (1982). If reasonable men can differ, then "the verdict will not be disturbed." *Id.* Furthermore, where the trial court has denied a motion "to strike the plaintiff's evidence or to set aside a jury verdict, the standard of appellate review in Virginia requires this Court to consider whether the evidence presented, taken in the light most favorable to the plaintiff, [here, appellee], was sufficient to support the jury verdict in favor of the plaintiff." *N. Va. Kitchen, Bath & Basement, Inc. v. Ellis*, 299 Va. 615, 622 (2021) (quoting *Parson v. Miller*, 296 Va. 509, 523-24 (2018)).

B. *Evidence of Causation*

In my view, the issue of proximate cause was properly presented to the jury. "When a verdict is based on circumstantial evidence, '[a]ll that is required is that a jury be satisfied with proof which leads to a conclusion with probable certainty where absolute logical certainty is impossible.'" *Chase v. Breit*, 226 Va. 102, 104 (1983) (alteration in original) (quoting *Bly v. S. Ry. Co.*, 183 Va. 162, 176 (1944)). "If the facts proved support a reasonable inference that the act occurred, a jury issue exists." *Id.* Although proof of causation cannot be based on mere conjecture or speculation, the evidence here was sufficient to allow the jury to reasonably conclude that appellant was a proximate cause of the collision and resulting harm to appellee.

As the majority thoroughly sets forth the pertinent case law on negligence and proximate cause, I will not repeat it here. Crucially, however, we are mindful that "[a] green light is [not] an unqualified command to a motorist to move in the direction indicated under any and all circumstances. It is only a command to do so in the exercise of reasonable care . . . ." *Medlar v. Mohan*, 242 Va. 162, 167 (1991) (second and third alterations in original) (quoting *Damron v. Hagy*, 220 Va. 455, 457 (1979)). Thus, "[t]he duty of maintaining a proper lookout requires the

favored driver to be on the alert for a motorist who attempts to drive through the intersection." *Hodnett v. Friend*, 232 Va. 447, 451 (1987). This "duty to keep a proper lookout . . . requires ordinary care to look in *all* directions for vehicles that would affect their driving, to see what a reasonable person would have seen, and to react as a reasonable person would have acted to avoid a collision under the circumstances." *Henderson v. Gay*, 245 Va. 478, 481 (1993) (emphasis added).

In this case, the accident occurred in the afternoon on a clear, sunny day in dry conditions. The intersection was large, with four wide traffic lanes going each direction—eight total, with a grassy median in between.[23] Appellant testified that she had 300 to 400 feet of "unobstructed view" of the roadway. There was a slight incline, but, as appellant testified, and the photographic exhibits and Burke's testimony confirm, it did not obstruct her view of the intersection. Appellant was driving in the right-hand through lane at the time of the collision.

Burke, who was driving in front of appellant in the right-hand through lane before getting into the right turn lane, noticed Spurlock's vehicle at the intersection. Spurlock was facing the opposite direction, waiting in the left-hand turn lane. At that time, Burke said Spurlock was "slowed to a stop or was creeping at that point. . . . She was yielding to me." Burke said that Spurlock's vehicle was "completely visible" and was "obvious[ly]" waiting to turn left. Burke started to turn right, and approximately four seconds later, heard the crash.

Appellant, driving behind Burke, noticed none of this. Crucially, the point of impact was the *rear* passenger's-side of Spurlock's car. In order for Spurlock to be in that position, she had to cross multiple open, visible lanes of traffic—three to be in front of appellant in her lane, and almost four to be in the position she was in at the time of impact. Most of Spurlock's vehicle had to have already crossed *directly in front of appellant's vehicle* in order for her to strike the

---

[23] In each direction, the right-most and left-most lanes were only for turning vehicles.

rear portion of the vehicle. Appellant did not brake, swerve, or otherwise try to avoid the collision. And how could she, given that by her own testimony, she never saw Spurlock's vehicle before impact, only a "white blur."

Under these circumstances, I do not believe we are without any evidence of causation. The majority finds there are three "equally plausible" theories of causation, the third of which being that appellant's negligence "was not a proximate cause at all, notwithstanding her failure to keep a proper lookout." This third option comes into play "if Spurlock had dashed in front of appellant's vehicle such that no reasonable person exercising due care and keeping a proper lookout could have avoided the collision." But, even accepting the premise that Spurlock darted in front of appellant, a reasonable person exercising due care would have, or should have, noticed a vehicle approaching them from the left, across a wide intersection with multiple lanes of traffic. It is reasonable to infer from the evidence (particularly when viewed in the light most favorable to appellee, the prevailing party) that appellant, in the exercise of due care and while maintaining a proper lookout, would have observed Spurlock's vehicle prior to impact—as did Burke—and respond with some defensive or evasive action. But she did not. There is no evidence, viewed under the correct standard, that suggests that appellant, as a matter of law, could not have acted to either avoid or to mitigate the severity of this accident. Instead, given the point of impact on Spurlock's car, a reasonable factfinder could conclude that had appellant slowed down even slightly, Spurlock's entire vehicle might have made it past her, and the accident might have been avoided, or the impact would have been greatly lessened. Accordingly, I do not believe the evidence is such that "the minds of reasonable men could not differ," *Duncan*, 223 Va. at 376, and I would not disturb the jury's verdict. *See* Va. Const. art. I, § 11 ("[I]in suits between man and man, trial by jury is preferable to any other, and ought to be held sacred.").

Further, I believe that adopting the majority's view places appellant in a better legal position for never having seen Spurlock's vehicle than she would have been had she seen it prior to impact. In that view, appellant's failure to see Spurlock, given there being no direct eyewitness testimony about the vehicle's movements in the four seconds immediately prior to the accident, renders the issue of proximate cause speculative. But, had appellant seen Spurlock, her observations and her reactions thereto would have been tested and, even under the majority's reasoning, would have created a jury issue and thus not warrant reversal. I find it troubling that appellant should benefit from her own inattentiveness and poor eyesight which, as the jury found in rendering its verdict, was a circumstance attributable to her own negligence.

Of course, like all such cases, this is fact-dependent. The accident occurring in a large intersection with many lanes and clear visibility is entirely distinct from, say, a winding road with hidden drives from which Spurlock's sudden movement would have more understandably caught appellant unaware. But those are not the facts before us. Had appellant been wearing her glasses, or otherwise been attentive to her surroundings, she would have noticed other vehicles on the roadway, most crucially Spurlock's, and could have taken some precautions that would have made it possible to avoid the accident. Had she been paying attention so that she saw Spurlock approaching *before* the vehicle was in front of her, or even reacted in any way as Spurlock passed in front of her, she could have at least attempted to slow down or otherwise avoid the collision. The utter lack of evidence that appellant either noticed or reacted to Spurlock until Spurlock had nearly driven past her, combined with her documented negligence and the affirmative evidence that Spurlock was otherwise visible, in my view, presents adequate evidence that appellant's negligence was a proximate cause of the accident. In other words, the evidence of causation was "sufficient to take the question out of the realm of mere conjecture, or speculation, and into the realm of legitimate inference." *Virginian Ry. Co. v. Haley*, 156 Va.

350, 381-82 (1931).  Given the affirmative evidence of appellant's negligence, together with the reasonable inferences to be drawn therefrom, the issue of whether appellant's negligence was a proximate cause of the accident (and, hence, the injuries suffered by appellee) was properly before the jury, and I am loath for this Court to substitute its judgment for that of the jury.  For these reasons, I respectfully dissent.